## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

ESTATE OF RICHARD WARD, by and through its personal representative Kristy Ward Stamp, and
KRISTY WARD STAMP,

      Plaintiffs,

v.

PUEBLO COUNTY, COLORADO[1];
DEPUTY CHARLES MCWHORTER, in his individual and official capacity;
DEPUTY CASSANDRA GONZALES, in her individual and official capacity;
DEPUTY JACOB MAHAN, in his individual and official capacity;
DEPUTY CHRISTINE SPENCER, in her individual and official capacity;
DEPUTY NICOLAS BERUMEN, in his individual and official capacity;
DEPUTY ROBERT QUINTANA, in his individual and official capacity, and
SERGEANT JOSH RAGAN, in his individual and official capacity,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

[1] "Pueblo County, Colorado" is the correct name of the governmental entity Defendant. There is a split of opinion among some judges in this district and elsewhere regarding the proper method of obtaining County liability in an action brought under 42 U.S.C. Section 1983.  The County is a "person" within the meaning of Section 1983, and therefore is subject to suit pursuant to the principles of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978).  Some judges, however, require that plaintiffs name either the Board of County Commissioners (pursuant to a Colorado state statute) or the sheriff in his/her official capacity to effectively name a Colorado county as a Section 1983 defendant. If the Court in this matter determines that institutional liability for the County can be effectuated only by naming as Defendants the "Board of County Commissioners of Pueblo County" and/or "Sheriff David J. Lucero in his official capacity," or some other entity, Plaintiff will substitute parties, and this shall serve as notice to those putative Defendants that they are the intended defendant in this action.

## INTRODUCTION

*Is it a gun, is it a knife*
*Is it a wallet, this is your life*
*It ain't no secret (it ain't no secret)*
*It ain't no secret (it ain't no secret)*
*No secret my friend*
*You can get killed just for living in your American skin*

-Bruce Springsteen, "American Skin (41 Shots)"

1.      On February 22, 2022, Richard Ward accompanied his mother, Kristy Ward Stamp and her boyfriend to pick up Mr. Ward's younger brother from middle school. Ms. Ward Stamp's boyfriend was driving, Kristy was in the passenger seat, and Richard was in the backseat.

2.      As Richard, Kristy, and Kristy's boyfriend sat in Kristy's SUV, waiting in the school pickup line, Pueblo County Sheriff's Deputy Charles McWhorter approached the car and began to question Richard about an alleged non-violent, not apparently criminal disturbance.

3.      Richard cooperatively and politely answered Deputy McWhorter's questions concerning the alleged disturbance for several minutes.

4.      Deputy McWhorter asked Richard for his identification, and in response Richard began to search through his pockets, pausing to show Deputy McWhorter various items as he pulled them out.

5.      As he searched for the identification, Richard placed a pill in his mouth, likely a medication prescribed to treat an anxiety condition, having already informed Deputy McWhorter that he was anxious around law enforcement because he had previously been the victim of excessive force at the hands of law enforcement.

6.      Deputy McWhorter aggressively demanded to know what Richard had placed in

2

his mouth, and though Richard immediately and truthfully responded that it was a pill, Deputy McWhorter nevertheless suddenly grabbed Richard by the arm and collar and dragged him from the backseat of his mother's SUV, and with the help of nearby Pueblo County Sheriff's Deputy Cassandra Gonzales, threw him violently to the ground, recklessly and deliberately initiating a wholly unnecessary and purposeless physical use of force against and struggle with Mr. Ward.

7.      Both Deputy McWhorter and Deputy Gonzales immediately took Richard to the ground to apply even more physical force to Richard.

8.      Having unjustifiably escalated the encounter rather than maintaining a hands-off but firm police presence, the two officers were now aggressively manhandling Richard who had been taken to the ground without warning and having done nothing wrong.

9.      Within only a few seconds of pulling Richard—who was unarmed—from the car onto the ground underneath the hands-on force being applied by both deputies, Deputy McWhorter shot Richard three times with his service firearm, point blank, in the chest.

10.     Though Richard survived for some time after Deputy McWhorter shot him, writhing in pain and shock, neither Deputy McWhorter nor Deputy Gonzales made any effort to provide first aid or to attempt life-saving measures. They did not so much as place pressure on Richard's obvious bullet wounds, or even attempt to take a pulse.

11.     Instead, McWhorter and Gonzales stood over Richard and watched him die.

12.     Richard's mother Kristy Ward Stamp and her boyfriend begged the officers to tell them whether Richard had been shot, and whether he was alive.

13.     Deputies McWhorter and Gonzales ignored Kristy and her boyfriend's urgent pleas. Ultimately, though neither one of them had committed a crime of any kind, and neither

was even charged with a crime in connection with the foregoing events, Pueblo County Sheriff's

Deputies falsely arrested them, seized their property, and interrogated them in a brazen act of

thuggish intimidation.

## JURISDICTION AND VENUE

14.     This action arises under the Constitution and laws of the United States and is

brought pursuant to Title 42 U.S.C. § 1983. It is also brought under Colorado state law, including

the wrongful death act, C.R.S. § 13-21-201 *et seq.*[2] Jurisdiction is conferred on this Court

pursuant to 28 U.S.C. § 1331 and § 1367. Jurisdiction supporting Plaintiff's claim for attorney

fees and costs is conferred by 42 U.S.C. § 1988 and Colo. Rev. Stat. § 13-21-131(3).

15.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).  All

the events alleged herein occurred within the State of Colorado.

16.     Timely Notice of Claim under the Colorado Governmental Immunity Act was

given by Plaintiffs to Defendants regarding Defendant McWhorter's willful, wanton, wrongful

felonious killing of Richard Ward, in violation of Colorado's wrongful death statute.

## PARTIES

17.     At all times pertinent to the subject matter of this litigation, the decedent Richard

Ward was a citizen of the United States of America and a resident of and domiciled in the State

of Colorado. Kristy Ward Stamp is his mother and the Personal Representative of the Estate of

Richard Ward, and she is a resident of and domiciled in the State of Colorado.

18.     Defendant Pueblo County, Colorado, is a municipality organized under the laws

---

[2] Plaintiff anticipates that she will seek to amend her pleadings to add a claim for exemplary
damages pursuant to Colo. Rev. Stat. § 13-21-102, after disclosures have been exchanged and
after she has established the existence of a triable issue of exemplary damages.

of the State of Colorado and is a "person" subject to suit under 42 U.S.C. § 1983. The Pueblo County Sheriff's Office ("PCSO") is a law enforcement agency that is part of Pueblo County. Defendant Pueblo County is responsible for the oversight, supervision, discipline, and training of PCSO deputies including the other Defendants named in this lawsuit.

19.    At all relevant times, Defendant Charles McWhorter was a citizen of the United States and a resident of and domiciled in Colorado. At all times pertinent, Defendant McWhorter was acting within the scope of his official duties and employment and under color of state law in his capacity as a deputy employed by the Pueblo County Sheriff's Office.

20.    At all relevant times, Defendant Cassandra Gonzales was a citizen of the United States and a resident of and domiciled in Colorado. At all times pertinent, Defendant Gonzales was acting within the scope of her official duties and employment and under color of state law in her capacity as a deputy employed by the Pueblo County Sheriff's Office.

21.    At all relevant times, Defendant Josh Ragan was a citizen of the United States and a resident of and domiciled in Colorado. At all times pertinent, Defendant Ragan was acting within the scope of his official duties and employment and under color of state law in his capacity as a sergeant employed by the Pueblo County Sheriff's Office.

22.    At all relevant times, Defendant Nicolas Berumen was a citizen of the United States and a resident of and domiciled in Colorado. At all times pertinent, Defendant Berumen was acting within the scope of his official duties and employment and under color of state law in his capacity as a deputy employed by the Pueblo County Sheriff's Office.

23.    At all relevant times, Defendant Robert Quintana was a citizen of the United States and a resident of and domiciled in Colorado. At all times pertinent, Defendant Quintana

was acting within the scope of his official duties and employment and under color of state law in his capacity as a deputy employed by the Pueblo County Sheriff's Office.

24.     At all relevant times, Defendant Christine Spencer was a citizen of the United States and a resident of and domiciled in Colorado. At all times pertinent, Defendant Spencer was acting within the scope of her official duties and employment and under color of state law in her capacity as a deputy employed by the Pueblo County Sheriff's Office.

## FACTUAL ALLEGATIONS

### Defendant Pueblo County Sheriff's Office Deputies McWhorter and Gonzales Unlawfully Seized, Assaulted, Shot, and Killed Richard Ward

25.     On the afternoon of February 22, 2022, Richard Ward accompanied his mother, Plaintiff Kristy Ward Stamp and her boyfriend to pick up Mr. Ward's younger brother from his school day at Liberty Point International Middle School in Pueblo, Colorado.

26.     Mr. Ward, Ms. Ward Stamp, and Ms. Stamp's boyfriend drove to the school together in Ms. Ward Stamp's white SUV. Ms. Ward Stamp's boyfriend sat in the driver's seat, Ms. Ward Stamp sat in the front passenger seat, and Mr. Ward sat in the rear seat as they awaited Mr. Ward's younger brother.

27.     As the trio waited, Mr. Ward decided to step out of the SUV for a brief walk around the area. He returned to the SUV a few minutes later.

28.     As he was returning to his mother's car from his walk, Mr. Ward mistook another similar-looking white SUV for Ms. Ward Stamp's white SUV; he opened the door to that vehicle and briefly entered it, before quickly realizing his error and immediately leaving the vehicle with an apology to the driver. Both Mr. Ward and the driver of the car were surprised at this encounter.

29.     Mr. Ward then found his mother's similar-looking SUV and re-entered the backseat. He explained to his mother and her boyfriend the brief mistaken encounter he had just experienced.

30.     Several minutes later, Defendant Pueblo County Sheriff's Deputy Charles McWhorter approached Ms. Ward Stamp's SUV to contact Mr. Ward, who was in the backseat.

31.     Defendant McWhorter seized Mr. Ward's elbow within seconds of his initial contact with Mr. Ward, and Mr. Ward asked that Defendant McWhorter let go of him.

32.     Mr. Ward told Defendant McWhorter that he was anxious around law enforcement personnel because he had previously experienced excessive force at the hands of law enforcement.

33.     Eventually, Defendant McWhorter told Mr. Ward that he had received a report that Mr. Ward had been attempting to open nearby car doors.

34.     Mr. Ward explained that he had mistaken another vehicle for his mother's SUV and had errantly opened that vehicle's door, only to leave and return to the correct vehicle after he quickly realized his error.

35.     Mr. Ward noted that he had apologized to the driver whose vehicle he had mistakenly entered.

36.     Though Mr. Ward experienced significant anxiety around law enforcement and found himself confronted by Defendant Deputy McWhorter despite having committed no crime, he remained calm and answered Defendant McWhorter's questions.

37.     During the conversation between Mr. Ward and Defendant McWhorter, Defendant Pueblo County Sheriff's Deputy Cassandra Gonzales arrived on scene and stood a

7

few feet behind Defendant McWhorter such that she could directly observe the interaction

between Defendant McWhorter and Mr. Ward.

38.    Defendant McWhorter asked Mr. Ward if he had his identification with him. Mr.

Ward responded that he might, and began to dig through his pockets in an apparent effort to

comply and find his identification.

39.    As Mr. Ward looked for his identification, Defendant McWhorter asked if Mr.

Ward had any weapons. Mr. Ward responded that he didn't think so, but that he might have a

pocketknife.

40.    Defendant McWhorter advised Mr. Ward not to pull the pocketknife out if he did

actually have it.

41.    In fact, Mr. Ward did not have a pocketknife or any other weapon, and never

produced or displayed any weapon. He removed some lighters from his pocket and showed them

to Defendant McWhorter.

42.    At this point, though he had no legitimate law enforcement purpose to draw or use

a firearm, Defendant McWhorter recklessly unlocked his safety holster and pulled his pistol up

and out of the holster's locking mechanism.

43.    As Mr. Ward continued to search for his identification, he came upon what was,

upon information and belief, a prescribed anti-anxiety tablet in one of his pockets.

44.    As Mr. Ward had already explained to Defendant McWhorter, he suffered from

anxiety around law enforcement personnel. Mr. Ward placed the pill in his mouth.

45.    Defendant McWhorter saw Mr. Ward take the pill, and suddenly and forcefully

went hands-on, demanding to know, "What did you just stick in your mouth?" In the same

moment, and before Mr. Ward could respond, Defendant McWhorter violently seized Mr. Ward

by his right arm and collar and began to roughly drag him from the vehicle—recklessly and

deliberately escalating a use of force against and struggle with Mr. Ward as a profoundly

unreasonable first option in response to Mr. Ward taking a pill.

46.     Despite Defendant McWhorter's sudden and bizarre initiation of a use of

significant force against Mr. Ward when it was completely unjustified, Mr. Ward did not offer

physical resistance as Defendant McWhorter manhandled him, and instead truthfully answered

Defendant McWhorter's question, repeatedly stating that he had put a pill in his mouth as he was

yanked from the vehicle.

47.     Defendant McWhorter did not offer Mr. Ward any opportunity to leave the

vehicle under his own power, or any explanation of why he had seized Mr. Ward; indeed, he

issued no orders to Mr. Ward at all until after he initiated his use of force.

48.     Defendant McWhorter could have ordered Richard to spit the pill out.  He could

have ordered him to step out of the car. He could even have ordered him to present his hands to

McWhorter so as to address any concerns McWhorter might have had about that. McWhorter did

none of these things.

49.     Though Defendant Gonzales observed the interaction between Mr. Ward and

Defendant McWhorter from mere feet away and knew that Defendant McWhorter did not have

legal justification to use any physical force against Mr. Ward, she did not intervene to protect

Mr. Ward from Defendant McWhorter's unlawful use of force and violation of Mr. Ward's

constitutional rights.

50.     Instead, Defendant Gonzales joined in the assault, seizing Mr. Ward's left

shoulder and assisting Defendant McWhorter in violently dragging Mr. Ward from the vehicle.

51.    Neither Deputy McWhorter nor Deputy Gonzales made any effort to deescalate the situation after McWhorter rapidly went hands-on with Mr. Ward. Indeed, both consistently escalated the situation, recklessly creating a situation where they apparently (but wrongly) believed that more force was warranted.

52.    Mr. Ward landed on the ground in a sitting position, between Defendant Gonzales and Defendant McWhorter.

53.    Mr. Ward did not attempt to rise from the ground, to strike Defendants, or even to flee from them.

54.    Mr. Ward had not engaged in any violence or threats of violence, and neither Defendant McWhorter nor Defendant Gonzales had observed or even received a report of any violent action on the part of Mr. Ward.

55.    Ignoring Mr. Ward's continued lack of meaningful resistance, Defendant McWhorter and Defendant Gonzales recklessly and deliberately escalated the situation, again taking hold of his collar and throwing him to the ground face first.

56.    Defendants immediately went to the ground to continue using force against Mr. Ward.

57.    Defendant Gonzales seized Mr. Ward's legs and controlled them through the application pain compliance techniques.

58.    Simultaneously, Defendant McWhorter engaged Mr. Ward's arms and upper body, rolling Mr. Ward over such that Defendant McWhorter's body was partially on top of Mr. Ward's torso.

59.     Mr. Ward remained unarmed and trapped in the grips of two armed police officers; he offered no appreciable threat to escape or overcome their ongoing assault.

60.     Though he confronted no lethal threat and had himself recklessly and deliberately created the physical struggle with Mr. Ward by needlessly and unlawfully seizing and assaulting him, Defendant McWhorter drew his pistol from its holster and fired three bullets into Mr. Ward's chest, point blank.

61.     Only approximately twenty seconds elapsed from the time that Defendants dragged Mr. Ward from the SUV to the time that Defendant McWhorter shot Mr. Ward.

62.     Only approximately two minutes and ten seconds elapsed from the time that Defendant McWhorter first contacted Mr. Ward to the time that Defendant McWhorter shot him.

63.     Defendant McWhorter did not issue any warning to Mr. Ward that he would use deadly force prior to shooting Mr. Ward.

64.     By dragging Mr. Ward from his mother's SUV while Mr. Ward was cooperative, and by continuously using escalating force against him even when he *still* did not offer significant resistance, Defendants McWhorter and Gonzales recklessly and deliberately created an environment establishing conclusively to Mr. Ward that cooperation with and obedience to Defendants would not cause Defendants to stop physically hurting him.

65.     Indeed, Defendants McWhorter and Gonzales never allowed Mr. Ward so much as an opportunity to comply with commands, relentlessly physically assailing him from the moment that Defendant McWhorter initially seized him in the SUV until Defendant McWhorter shot him thrice in the torso.

66.     Both Defendant Deputies' own conduct during their seizure of Mr. Ward

unreasonably created circumstances later used to try to justify the decision to use more force, and this reckless and deliberate conduct was immediately connected with the seizure of Mr. Ward leading to his death.

67.     To whatever minimal extent Mr. Ward's paltry attempt at self-defense demanded a forceful response from Defendants, Defendants unreasonably created the need for any such response through their preceding reckless, deliberate, and completely unreasonable uses of force against Mr. Ward.

68.     Defendants' conduct as described herein violated clearly established law of which a reasonable officer in the jurisdictional boundaries of the Tenth Circuit and elsewhere knew or should have known. *See, e.g., Estate of Ceballos v. Husk*, 919 F.3d 1204 (10th Cir. 2019); *Allen v. Muskogee, Okl.*, 119 F.3d 837, 840 (10th Cir. 1997); *Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699 (10th Cir. 1995).

## Neither Defendant McWhorter nor Defendant Gonzales Attempted to Render Medical Aid to Mr. Ward

69.     Though Defendant McWhorter's shots grievously injured Mr. Ward, Mr. Ward was alive and moving in the immediate aftermath of the shooting.

70.     Neither Defendant Gonzales nor Defendant McWhorter attempted to render any emergency medical aid to Mr. Ward. They did not so much as place pressure on his wounds, check for a pulse, or even attempt to speak to Mr. Ward.

71.     Defendant McWhorter walked away from the scene of the shooting; Defendant Gonzales simply stood over Mr. Ward, offering no assistance of any kind. All the while, passing middle school students observed the gory scene.

72.     Approximately two minutes after Defendant McWhorter shot Mr. Ward and

caused him to lie bleeding on the ground with no medical treatment whatsoever, additional law enforcement personnel arrived on scene. Defendant PCSO Deputy Jacob Mahan approached Defendant Gonzales and asked if Mr. Ward was breathing; Defendant Gonzales responded in the negative.

73.     At this point, neither Defendant Gonzales nor anyone else had undertaken any kind of medical examination of Mr. Ward to determine whether he was breathing, whether he had a pulse, or to obtain any other basic information about Mr. Ward's medical condition.

74.     Though she assumed Mr. Ward was not breathing, and was plainly aware that he had been shot, Defendant Gonzales did not make any attempt to render emergency aid.

75.     Defendant Gonzales told Deputy Mahan that Pueblo County Sheriff's personnel were responsible for the shooting and told him not to ask further questions about the situation.

76.     Still, no one attempted to aid Mr. Ward in any way.

77.     Finally, nearly three minutes after Defendant McWhorter shot Mr. Ward, emergency medical personnel arrived and attempted to render aid.

78.     Mr. Ward was ultimately pronounced dead at the scene of the shooting.

**Defendants Arrested Ms. Ward Stamp and Her Boyfriend and Seized Their Belongings, Though They Were Never Suspected of or Charged With Any Crime**

79.     In the seconds after Defendant McWhorter shot Mr. Ward, Plaintiff Kristy Ward Stamp was in utter shock and disbelief, and begged Defendants McWhorter and Gonzales to tell her whether they had shot her son. Neither Defendant responded.

80.     Instead, Defendant McWhorter ordered Ms. Ward Stamp and her boyfriend to remain in the SUV.

81.     Though they had heard gunshots and knew that Defendants McWhorter and

Gonzales had likely killed Richard, Ms. Ward Stamp and her boyfriend complied with these
orders.

82.     Defendant McWhorter closed the rear door of the SUV from which he and
Defendant Gonzales had pulled Mr. Ward, preventing Ms. Ward Stamp and her boyfriend from
observing Mr. Ward's condition or the deputies' conduct.

83.     Shortly after his arrival on scene, Defendant Mahan walked to the driver's side of
Ms. Ward Stamp's SUV and addressed Ms. Ward Stamp and her boyfriend.

84.     Understandably distraught, they urgently asked whether Mr. Ward had been shot
and whether he was alive. Defendant Mahan refused to answer their questions.

85.     Defendant Mahan ordered Ms. Ward Stamp and her boyfriend to keep their hands
in the air. They complied, and Defendant Mahan forced them to maintain the uncomfortable
position for several minutes, though neither of them had any involvement in the investigation or
use of force against Mr. Ward.

86.     None of the defendants had any reasonable suspicion or probable cause to believe
that either Ms. Ward Stamp nor her boyfriend had committed any crime or represented a threat to
the safety or well-being of defendants or any third parties.

87.     Though neither Ms. Ward Stamp nor her boyfriend had committed a crime or had
any involvement in the investigation or use of force against Mr. Ward, PCSO deputies
handcuffed them, searched them, and placed them in police vehicles.

88.     Neither Ms. Ward Stamp nor her boyfriend were free to leave.

89.     Defendant Mahan handcuffed Ms. Ward Stamp's boyfriend, searched him, seized
his belongings, and placed him in a locked police vehicle.

90.     At the direction of Defendant Mahan, Defendant PCSO Deputy Nicolas Berumen handcuffed Ms. Ward Stamp; Defendant PCSO Deputy Christine Spencer searched Ms. Ward Stamp, seized her belongings, and placed her in a locked police vehicle.

91.     At the orders of Defendant PCSO Sergeant Josh Ragan, Defendant Berumen and Defendant PCSO, Deputy Robert Quintana drove Ms. Ward Stamp's boyfriend and Ms. Ward Stamp, respectively, to a PCSO facility, where they were detained and interrogated for approximately two hours before they were released. This custodial interrogation constituted an arrest of Ms. Ward Stamp.

92.     Neither Ms. Ward Stamp nor her boyfriend was ever charged with any crime in connection with the events of February 22, 2022.

93.     Neither Ms. Ward Stamp nor her boyfriend had committed any offense on that day.

94.     Though Mr. Ward was pronounced dead at the scene of the shooting, PCSO deputies cruelly refused to inform Ms. Ward Stamp whether her son had survived the shooting until after she had been custodially interrogated.

95.     PCSO personnel seized a variety of property from Ms. Ward Stamp, including but not limited to Ms. Ward Stamp's SUV, cell phone, and purse (which included her ID, among other things).

96.     PCSO failed to return the seized property, including the SUV, for months after Defendant McWhorter shot and killed Mr. Ward.

97.     PCSO equipped Defendant McWhorter with a new firearm and returned him to duty within days of his killing of Mr. Ward.

**Defendant Pueblo County is Municipally Liable for
Defendants McWhorter's and Gonzales's Use of Excessive Deadly Force**

98.     Pueblo County did not terminate or discipline Defendant McWhorter or

Defendant Gonzales, or even counsel them for their actions. Further, PCSO provided no

additional training to Defendant McWhorter, Defendant Gonzales, or other PCSO officers,

related to the killing of Mr. Ward.

99.     Pueblo County's official final decision regarding the events regarding the

shooting death of Mr. Ward is that Defendant McWhorter's and Defendant Gonzales's conduct

was appropriate, and engaged in pursuant to all approved police policies, practices and training

of the PCSO. This final official decision was made by and agreed to by all levels of Pueblo

County decisionmaking.

100.     Indeed, Defendant McWhorter was given another gun and put back out on the

street as a law enforcement officer within days of killing Mr. Ward.

101.     Pueblo County Sheriff's Office investigated the events described herein and

determined that the conduct of Deputies McWhorter and Gonzales comported with and were

pursuant to Pueblo County Sheriff's Office training, policies, customs and practices.

102.     Pueblo County's ratification of the conduct that caused Mr. Ward's death is not

alleged as proof that this ratification itself "caused" his death.  Rather, it evidences that

McWhorter's and Gonzales's conduct was engaged in pursuant to policy, custom, and practice of

Pueblo County; had it been *outside* of policy, disciplinary or remedial action would have been

taken.

16

103.    Defendants McWhorter and Gonzales acted intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard to Mr. Ward's federally protected rights, and acted under the preexisting and ongoing deliberately indifferent custom, policy, practice, training, and supervision of Defendant Pueblo County acting under color of state law.

104.    Defendant Pueblo County trains and tolerates its officers to use deadly force even under circumstances where the officer or a third party is not in imminent risk of death or serious bodily injury at the time of the officer shooting.

105.    Pueblo County fails to adequately train its law enforcement officers in practices necessary to ensure excessive force is avoided, including principles of de-escalation and threat assessment, when the need for such training is obvious to address recurring and foreseeable circumstances that a patrol deputy will likely confront in the course of their duties.

106.    Because Pueblo County created and tolerated a custom of deliberate indifference and failed to adequately train and supervise PCSO officers in the constitutional use of deadly force in circumstances that are eminently foreseeable to the Pueblo County Sheriff's Office, to deal with scenarios that are recurring for law enforcement patrol officers such as Defendants McWhorter and Gonzales, individuals like Mr. Ward were in danger of having their constitutional rights violated.

107.    Defendant Pueblo County fostered a policy of inaction in the face of knowledge that PCSO officers were reasonably likely to violate specific constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, which is the functional equivalent of a decision by Pueblo County itself to violate the Constitution.

108.    Defendant Pueblo County's policy of inaction and policies, customs, or practices in failing to properly train and supervise its employees were a moving force and proximate cause of Defendant McWhorter's and Defendant Gonzales's violation of Mr. Ward's constitutional rights.

109.    Defendant Pueblo County is responsible for (1) training its deputies to ensure they perform their duties consistent with the law, (2) supervising them to ensure compliance with the law, and (3) disciplining their improper conduct, so that County law enforcement officers can learn from the experiences of their fellow officers and be deterred from engaging in future misconduct that violates constitutional rights.

110.    Pueblo County's failure to train or supervise or discipline its employees has communicated to, and trained, PCSO officers, including Defendant McWhorter and Defendant Gonzales, that the use of excessive force is authorized. The failure to counsel or discipline misconduct constitutes actual on-the-job training which causes future similar unconstitutional conduct.

111.    By failing to institute policies, practices, customs, and/or training that provided PCSO officers with constitutional guidance on the use of deadly force, Defendant Pueblo County caused Defendant McWhorter and Defendant Gonzales to violate Mr. Ward's Fourth Amendment rights. As a direct result of Defendant Pueblo County's inadequacies in these areas, Defendant McWhorter shot Mr. Ward and killed him.

112.    Defendants' acts or omissions caused Mr. Ward and his Estate damages because he suffered physical and mental pain, fear, loss of enjoyment of life, loss of liberty, and sense of

security and individual dignity, loss of relationships and consortium, and death, among other injuries, damages, and losses.

113.    Defendants' actions, as described, deprived Mr. Ward and his Estate and Ms. Ward Stamp of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused them substantial injuries, losses and damages.

### STATEMENT OF CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourth Amendment Violation--Excessive Force**
**(The Estate of Richard Ward Against Defendants**
**McWhorter, Gonzales and Pueblo County)**

114.    Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

115.    Defendants McWhorter and Gonzales acted under color of state law, and within the course and scope of their employment, in their capacity as officers of the Pueblo County Sheriff's Office at all times relevant to the allegations in this Complaint.

116.    Defendants are "persons" within the meaning of Title 42 U.S.C. § 1983.

117.    Under the Fourth Amendment, as incorporated against the states by the Fourteenth Amendment, Decedent Richard Ward had a constitutionally protected right to be secure in his person against unreasonable seizures through the use of excessive force.  It is clearly established that excessive force violates the Constitution. Specifically, it has been clearly established since at least 1985 that it is unconstitutional to use deadly force when, as here, the officer does not have probable cause to believe the suspect posed an imminent threat of serious bodily injury or death to a police officer or any other person if not immediately apprehended.

118.    Under the application of the totality of circumstances as described herein, Defendants McWhorter and Gonzales violated Mr. Ward's clearly established constitutional rights to be free from excessive force, including deadly force.

119.    Any reasonable law enforcement officer knew or should have known of this clearly established right at the time of Mr. Ward's death.

120.    Defendants McWhorter and Gonzales did not have a legally valid basis to seize Mr. Ward by use of deadly force under the circumstances present.

121.    Defendants McWhorter and Gonzales seized Mr. Ward by means of objectively unreasonable and excessive deadly force when they pulled Mr. Ward from his car and wrestled him to the ground, without having a reasonable belief Mr. Ward posed a significant threat to any officer or any other person.

122.    Defendant McWhorter seized Mr. Ward by means of objectively unreasonable and excessive deadly force when he shot Mr. Ward to death without having a reasonable belief Mr. Ward posed a significant threat to any officer or any other person.

123.    Defendant McWhorter had no basis to believe that he or any other person was at imminent risk of death or serious bodily injury such as to justify deploying deadly force rather than other measures to apprehend Mr. Ward.

124.    The decision to pull Mr. Ward from his car and wrestle him to the ground was excessive under the circumstances.

125.    The decision to employ deadly force by shooting Mr. Ward at point blank range in the chest multiple times and killing him, when other less-than-lethal force was readily available, was excessive under the circumstances.

126.    Defendant Gonzalez joined into the use of force upon Mr. Ward when such physical force was unwarranted, and she failed to intervene when Defendant McWhorter initiated and escalated the unwarranted force upon Mr. Ward.

127.    Defendants McWhorter's and Gonzales' actions were objectively unreasonable in light of the facts and circumstances confronting them. Any reasonable officer in their position would have known that it was unreasonable to use deadly force under the totality of the circumstances and that to do so would violate Mr. Ward's clearly established constitutional rights.

128.    Defendant McWhorter's and Gonzales' actions were motivated by malice and/or involved reckless or callous disregard or indifference to Mr. Ward's federally protected rights, and they engaged in these actions and omissions intentionally, willfully, and/or wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Mr. Ward's constitutionally protected rights.

129.    Defendants McWhorter and Gonzales acted as they did pursuant to and because of the customs, policies, training, and/or practices of Defendant Pueblo County.

130.    Defendants McWhorter's and Gonzales' actions were the direct result of Defendant Pueblo County's (1) promulgation, creation, implementation, or enforcement of policies, customs, or practices that allowed PCSO officers, including Defendants McWhorter and Gonzales, to use excessive and deadly force against people regardless of whether constitutional requirements for such force were met, and/or (2) Pueblo County's deliberate choice to follow a course of action from among various alternatives available of not adequately training or supervising PCSO officers, including Defendants McWhorter and Gonzales, regarding the

constitutional use of deadly force, given that the need for such training and supervision was so obvious, and the inadequacy of training and/or supervision was so likely to result in the violation of constitutional rights such as those described herein.

131.    Defendant Pueblo County adheres to a policy and practice of permitting the use of deadly force on a suspect even when there is no immediate risk of death or serious bodily injury when the officer uses deadly force.  Adherence to such a policy makes permissible under official city policy the unconstitutional use of deadly force.

132.    Defendant Pueblo County knew or should have known that its acts or omissions were substantially certain to cause PCSO officers, including Defendants McWhorter and Gonzales, to violate individuals' constitutional rights to be free from excessive and deadly force, and it consciously or deliberately chose to disregard this risk of harm in adhering to its policy, custody, or practice of failing to provide that PCSO officers use deadly force only within constitutional limits, and/or in deliberately choosing not to provide adequate training to PCSO officers in this area.

133.    Therefore, Defendant Pueblo County set in motion a series of events that it knew would likely cause an individual in a similar situation as Mr. Ward to be deprived of the constitutional right to be free from excessive force at the hands of law enforcement. But for the above acts or omissions of Defendant Pueblo County, Mr. Ward would not have been subjected to a violation of his Fourth Amendment rights, and such a deprivation was a proximate cause and a natural and foreseeable consequence of these acts and omissions.

134.    As a direct and proximate cause of Defendants' unconstitutional acts and omissions, Plaintiff Estate of Richard Ward suffered injuries, damages, and losses.

135.    Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff Estate's injuries and losses, including but not limited to Mr. Ward's death, the physical and mental pain and anguish Mr. Ward suffered before and during his shooting death (including his suffering while Defendants McWhorter and Gonzales failed to provide any emergency care – or even comfort – as he lay dying), the loss of Mr. Ward's relationships with his family, and other compensatory and special damages including but not limited to permanent lost earnings and earnings capacity of Mr. Ward.

136.    Defendants' intentional actions or inactions, as described herein, intentionally deprived Mr. Ward of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**SECOND CLAIM FOR RELIEF**
**Colo. Rev. Stat. § 13-21-131 – Violation of Colo. Const. Art. II,**
**Section 7 - Excessive Force**
**(On Behalf of Estate of Richard Ward Against**
**Defendants McWhorter and Gonzales)**

137.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

138.    Defendants McWhorter and Gonzales acted under color of state law and within the course and scope of their employment as law enforcement officers at all times relevant to the allegations in this Complaint.

139.    At all relevant times, Defendants McWhorter and Gonzales were "peace officers" within the meaning of Colo. Rev. Stat. § 24-31-901(3) and were employed by a local government.

140.    Plaintiffs had a protected interest under Colorado Constitution, article II, § 7 in

23

being free from the use of excessive force by law enforcement personnel.

141.    Neither Individual Defendant is entitled to Qualified Immunity in an action alleging a violation of this state constitutional provision. C.R.S. Section 13-21-131 (2)(b) provides: "Qualified Immunity is not a defense to liability pursuant to this section."

142.    Defendants McWhorter and Gonzales seized Mr. Ward by means of unreasonable and excessive physical force, including but not limited to deadly force.

143.    Defendants McWhorter and Gonzales did not have, at any time before or during their encounter with Mr. Ward, a legally valid basis to seize him.

144.    Defendants McWhorter and Gonzales had no warrant authorizing any seizure of Mr. Ward.

145.    Mr. Ward had committed no crime and Defendants McWhorter and Gonzales did not have probable cause or reasonable suspicion to believe that Mr. Ward had committed, was committing, or was going to commit a crime.

146.    Defendants McWhorter and Gonzales had no reasonable basis to believe Mr. Ward posed a threat of harm to them, any other officers, or anyone else.

147.    Before and during Mr. Ward's encounter with Defendants McWhorter and Gonzales, Mr. Ward made no attempt to flee from them or other officers, nor did Mr. Ward resist Defendants' commands.

148.    Defendants McWhorter and Gonzales did not have a legally valid basis to seize Mr. Ward in the manner and with the level of force used under the circumstances presented.

149.    Defendants McWhorter's and Gonzales' use of force against Mr. Ward, as described herein, was objectively unreasonable in light of the circumstances confronting them

before and during the encounter with Mr. Ward.

150.    Defendants McWhorter and Gonzales violated Mr. Ward's state constitutional rights by using objectively unreasonable and excessive deadly force against him.

151.    Defendants McWhorter and Gonzales engaged in a collective plan or effort to use unreasonable excessive force against Mr. Ward, or alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendant's unlawful use of force against Mr. Ward, despite being in a position and having the opportunity and obligation to do so. Each is therefore liable for the damages resulting from the objectively unreasonable use of force against Mr. Ward.

152.    Defendants McWhorter and Gonzales deprived Mr. Ward of individual rights secured by the bill of rights of the Colorado Constitution.

153.    Defendants McWhorter and Gonzales did not act upon a good faith and reasonable belief that their actions in using unreasonable and excessive force against Mr. Ward were lawful.

154.    The acts or omissions of Defendants McWhorter and Gonzales were the moving force behind, and the proximate cause of, Mr. Ward's injuries and his death.

155.    Defendants McWhorter's and Gonzales' conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which Defendants must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Mr. Ward.

### THIRD CLAIM FOR RELIEF
### Battery Causing Wrongful Death
### Colo. Rev. Stat. § 13-21-201 *et seq.*
### (Plaintiff Kristy Ward Stamp Against Defendant McWhorter)

156.    Plaintiff Kristy Ward Stamp hereby incorporates all other paragraphs of this

Complaint as if fully set forth herein.

157.     Pursuant to Colo. Rev. Stat. §§ 24-10-105(1) and 24-10-118(2)(a), public employees like Defendant McWhorter are not immune under the Colorado Governmental Immunity Act ("CGIA") for acts or omissions that are willful and wanton.

158.     Both Defendants' conduct as described herein was willful and wanton.

159.     Pursuant to Colo. Rev. Stat. § 24-10-109, Plaintiff provided Defendant Pueblo County with timely notice of claim on August 17, 2022.

160.     Defendant McWhorter intentionally shot Mr. Ward with the intent to inflict harmful contact on Mr. Ward, and such contact killed Mr. Ward.

161.     As described in detail in above, Defendant McWhorter's shooting of Mr. Ward did not constitute the use of reasonable force because the shooting was in excess of the amount of force that an officer in his position would have reasonably believed necessary.

162.     Defendant McWhorter's intentional infliction of physical harm upon Mr. Ward, causing his death, was without legal authorization, privilege, or consent.

163.     In shooting Mr. Ward, Defendant McWhorter consciously disregarded a substantial and unjustifiable risk of danger of death or serious bodily injury to Mr. Ward.

164.     Defendant McWhorter's willful and wanton conduct caused Mr. Ward's death and Plaintiff's damages.

165.     Defendant McWhorter's and Defendant Gonzalez's conduct was attended by circumstances of malice, or willful and wanton conduct, which they must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences to Mr. Ward or his family, his safety and life and their lives.

166.     Defendant McWhorter's and Defendant Gonzalez's conduct also constituted a felonious killing under C.R.S. §§ 13-21-203 and 15-11-803, in that their conduct caused the death of Mr. Ward and that they (1) consciously disregarded (2) a substantial and (3) unjustifiable risk that they knew would (4) cause the death of another, namely, Mr. Ward.

167.     Defendant Gonzalez's conduct was felonious at least under the felony murder rule, which elevates the criminal culpability of an actor who engages in conduct associated or in conjunction with the killing of another individual such as that described herein.

168.     Plaintiff Kristy Ward Stamp, as the mother of Mr. Ward, suffered and continues to suffer economic and non-economic damages due to Defendant McWhorter's conduct, including but not limited to extreme emotional stress, grief, loss of companionship, impairment of quality of life, inconvenience, pain and suffering, funeral expenses, and financial losses due to the financial benefits she may have reasonably expected to receive from their son had he lived, and all other damages as allowed under the Colorado Wrongful Death Act.

## FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourth Amendment Unlawful Arrest
### (Kristy Ward Stamp Against All Defendants)

169.     Plaintiff Kristy Ward Stamp hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

170.     At all relevant times, Defendants were acting under the color of law.

171.     Defendants did not at any time have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Kristy Ward Stamp had committed or was committing any violation of the law prior to handcuffing her, taking her to the Sheriff's Office, and custodially interrogating her for hours.

172.     Defendants did not at any time have a reasonable basis for believing that Ms.

Ward Stamp was a danger to herself or others.

173.     Defendants did not at any time have a warrant authorizing any such search,

seizure, and/or detention of Ms. Ward Stamp's body or her belongings.

174.     Defendants, acting in concert with one another, seized and detained Ms. Ward

Stamp and did not allow her to leave.

175.     During this arrest, Defendants detained Ms. Ward Stamp against her will, despite

lacking any legally valid basis for their actions.

176.     At the time when Defendants arrested Ms. Ward Stamp without probable cause,

her Fourth Amendment right to be secure from unlawful arrest was clearly established.

177.     Defendants violated Ms. Ward Stamp's clearly established Fourth Amendment

rights by engaging in a false arrest and unlawful seizure of her person and her property that was

objectively unreasonable in light of the facts and circumstances confronting them.

178.     None of the Defendant law enforcement officers took reasonable steps to protect

Ms. Ward Stamp from the objectively unlawful arrest of the other Defendant officers, despite

being in a position to do so. Each is therefore liable for the damages resulting from the

objectively unlawful arrest and seizure used by the others.

179.     The acts or omissions of the individual Defendants were the moving force behind,

and the proximate cause of the injuries sustained by Ms. Ward Stamp.

**FIFTH CLAIM FOR RELIEF**
**Colo. Rev. Stat. § 13-21-131 – Violation of Colo.**
**Const. Art. II, Section 7 - Unlawful Arrest**
**(Kristy Ward Stamp against All Individual Defendants)**

180.     Plaintiff Kristy Ward Stamp hereby incorporates all other paragraphs of this

Complaint as if fully set forth herein.

181.    All Individual Defendants acted under color of state law and within the course
and scope of their employment as law enforcement officers at all times relevant to the allegations
in this Complaint.

182.    At all relevant times, the Individual Defendants were "peace officers" under Colo.
Rev. Stat. § 24-31-901(3) and were employed by a local government.

183.    Plaintiff had a protected interest under Colorado Constitution, article II, § 7 in
being free from unlawful arrest at the hands of law enforcement personnel.

184.    No Individual Defendant is entitled to Qualified Immunity in an action alleging a
violation of this state constitutional provision. C.R.S. Section 13-21-131 (2)(b) states: "Qualified
Immunity is not a defense to liability pursuant to this section."

185.    Defendants did not at any time have probable cause or reasonable suspicion, or
any other legally valid basis, to believe that Kristy Ward Stamp had committed or was
committing any violation of the law prior to handcuffing her, taking her to the Sheriff's Office
and interrogating her for hours.

186.    Defendants did not at any time have a warrant authorizing any search, seizure, or
arrest of Ms. Ward Stamp.

187.    Defendants, acting in concert with one another, seized and detained Ms. Ward
Stamp and did not allow her to leave.

188.    During this arrest, Defendants detained Ms. Ward Stamp against her will, despite
lacking any legally valid basis for their actions.

189.    Defendants engaged in a collective plan or effort to arrest Ms. Ward Stamp

without a legal justification, or alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendant's unlawful arrest Ms. Ward Stamp, despite being in a position and having the opportunity to do so. Each is therefore liable for the damages resulting from the unlawful arrest of Ms. Ward Stamp.

190.    Defendants deprived Ms. Ward Stamp of individual rights secured by the bill of rights of the Colorado Constitution.

191.    Defendants did not act upon a good faith and reasonable belief that their actions in arresting Ms. Ward Stamp were lawful.

192.    The acts or omissions of Defendants were the moving force behind, and the proximate cause of, Ms. Ward Stamp's damages.

193.    Defendants conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which Defendants must have realized was unlawful, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights of others, particularly Ms. Ward Stamp.

**SIXTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth Amendment**
**Unlawful Seizure of Property**
**(Kristy Ward Stamp Against All Individual Defendants)**

194.    Plaintiff Kristy Ward Stamp hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

195.    At all relevant times, the Individual Defendants were acting under the color of law.

196.    Ms. Ward Stamp had a protected Fourth Amendment interest against unreasonable governmental seizure of her property.

197.     Defendants, acting in concert with one another, seized and detained Ms. Ward Stamp's vehicle, cell phone, and wallet (with her ID).

198.     Defendants held without her consent Ms. Ward Stamp's vehicle and other property for months after they killed her son.

199.     Defendants did not at any time have a warrant authorizing seizure of Ms. Ward Stamp's cell phone and vehicle.

200.     Ms. Ward Stamp's Fourth Amendment right to be secure in her person from unreasonable searches and seizures was clearly established.

201.     Defendants violated Ms. Ward Stamp's clearly established Fourth Amendment rights by engaging in an unlawful seizure of his property that was objectively unreasonable in light of the facts and circumstances confronting them.

202.     No legally recognizable circumstances, exigent or otherwise, existed which would have justified or permitted Defendants' conduct.

203.     Defendants' actions were objectively unreasonable.

204.     Defendants engaged in these actions intentionally, willfully, and wantonly.

205.     None of the Defendant law enforcement officers took reasonable steps to protect Ms. Ward Stamp from the objectively unlawful property seizure of the other Defendant officers, despite being in a position to do so. Each is therefore liable for the damages resulting from the objectively unlawful seizure of property used by the others.

**SEVENTH CLAIM FOR RELIEF**
**Colo. Rev. Stat. § 13-21-131 – Violation of Colo. Const. Art. II, Section 7**
**Unlawful Seizure of Property**
**(Kristy Ward Stamp Against All Individual Defendants)**

206.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

207.    All Individual Defendants acted under color of state law and within the course and scope of their employment as law enforcement officers at all times relevant to the allegations in this Complaint.

208.    At all relevant times, the Individual Defendants were "peace officers" under Colo. Rev. Stat. § 24-31-901(3) and were employed by a local government.

209.    Plaintiff had a protected interest under Colorado Constitution, Article II, § 7 in being free from unreasonable search and seizure of her property at the hands of law enforcement personnel.

210.    No Individual Defendant is entitled to Qualified Immunity in an action alleging a violation of this state constitutional provision. C.R.S. Section 13-21-131 (2)(b) states: "Qualified Immunity is not a defense to liability pursuant to this section."

211.    Defendants did not at any time have any legally valid basis, to seize Ms. Ward Stamp's property (including her SUV, cell phone, and purse including her ID).

212.    Defendants did not at any time have a warrant authorizing any search, seizure, or arrest of Ms. Ward Stamp or her property.

213.    Defendants, acting in concert with one another, seized Ms. Ward Stamp's property and held kept it from her for months.

214.    Defendants engaged in a collective plan or effort to seize Ms. Ward Stamp's property without a legal justification, or alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendant's unlawful seizure of Ms. Ward Stamp's property,

despite being in a position and having the opportunity to do so. Each is therefore liable for the

damages resulting from the unlawful seizure of Ms. Ward Stamp's property.

215.    Defendants deprived Ms. Ward Stamp of individual rights secured by the bill of

rights of the Colorado Constitution.

216.    Defendants did not act upon a good faith and reasonable belief that their actions in

arresting Ms. Ward Stamp were lawful.

217.    The acts or omissions of Defendants were the moving force behind, and the

proximate cause of, Ms. Ward Stamp's damages.

218.    Defendants conduct described herein was attended by circumstances of malice, or

willful and wanton conduct, which Defendants must have realized was unlawful, or that was

done heedlessly and recklessly, without regard to the consequences, or of the rights of others,

particularly Ms. Ward Stamp.

## EIGHTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – First Amendment Violation - Retaliation
### (Kristy Ward Stamp Against All Defendants)

219.    Plaintiff Kristy Ward Stamp hereby incorporates all other paragraphs of this

Complaint as if fully set forth herein.

220.    The actions of Defendants as described herein, while acting under color of state

law, intentionally deprived Ms. Ward Stamp of her First Amendment right to be free from

retaliation for her protected speech.

221.    Plaintiff was engaged in First Amendment-protected expression when she

expressed strong outrage and opposition to Defendants' treatment of her son Richard, after she

learned that they had shot him unjustifiably.

222.     The actions of Defendants – wrongfully arresting Ms. Ward Stamp after she verbally expressed shock and grief at Defendant McWhorter killing her son – would chill a reasonable person from engaging in activity protected by the First Amendment.

223.     Ms. Ward Stamp's expression did not violate any law.

224.     Defendants' jointly and of their own accord responded to Plaintiff's First Amendment protected activity with retaliation, in the form of a wrongful arrest and seizure of her property.

225.     By unlawfully arresting Plaintiff and wrongfully seizing and keeping her property, Defendants sought to punish Plaintiff for exercising her First Amendment rights, to silence her, and to deter her from speaking in the future. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

226.     Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of her First Amendment rights.

227.     At the time when Defendants retaliated against Plaintiff Ward Stamp for exercising her First Amendment rights, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

228.     Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiff's constitutional rights.

229.     Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

230.    As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

231.    Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

### NINTH CLAIM FOR RELIEF
### Colo. Rev. Stat. § 13-21-131 – Violation of Colo.
### Const. Art. II, Section 10 - Retaliation
### (Kristy Ward Stamp Against All Individual Defendants)

232.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

233.    All Individual Defendants acted under color of state law and within the course and scope of their employment as law enforcement officers at all times relevant to the allegations in this Complaint.

234.    At all relevant times, the Individual Defendants were "peace officers" under Colo. Rev. Stat. § 24-31-901(3) and were employed by a local government.

235.    Plaintiff had a protected interest under Colorado Constitution, article II, § 10 in being free from law enforcement retaliation to protected free speech.

236.    No Individual Defendant is entitled to Qualified Immunity in an action alleging a violation of this state constitutional provision. C.R.S. Section 13-21-131 (2)(b) states: "Qualified Immunity is not a defense to liability pursuant to this section."

237.    Plaintiff was engaged in protected free speech.

238.    The actions of Defendants—wrongfully arresting Ms. Ward Stamp after she expressed shock at Defendant McWhorter killing her son—would chill a reasonable person from

engaging in protected free speech.

239.    Plaintiff's protected expression did not violate any law.

240.    Defendants jointly and of their own accord responded to Plaintiff's protected free speech with retaliation, in the form of wrongful arrest and unlawful seizure of her property.

241.    Defendants did not at any time have a warrant authorizing any search, seizure, or arrest of Ms. Ward Stamp.

242.    By unlawfully arresting Ms. Ward Stamp, Defendants sought to punish her for exercising her protected free speech rights, to silence her, and to deter her from speaking in the future. Defendants' retaliatory actions would chill a person of ordinary firmness from exercising her protected free speech rights.

243.    Defendants engaged in a collective plan or effort to arrest Ms. Ward Stamp without a legal justification and in retaliation for her protected speech, or alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendant's unlawful, retaliatory arrest of Ms. Ward Stamp's, despite being in a position and having the opportunity to do so. Each is therefore liable for the damages resulting from the retaliatory arrest of Ms. Ward Stamp.

244.    Defendants deprived Ms. Ward Stamp of individual rights secured by the bill of rights of the Colorado Constitution.

245.    Defendants did not act upon a good faith and reasonable belief that their actions in arresting Ms. Ward Stamp were lawful.

246.    The acts or omissions of Defendants were the moving force behind, and the proximate cause of, Ms. Ward Stamp's damages.

247.    Defendants conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which Defendants must have realized was unlawful, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights of others, particularly Ms. Ward Stamp.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against each of the Defendants, and grant all relief as allowed by law and equity, including, but not limited to:

(a)    Declaratory, equitable, and injunctive relief, as appropriate;

(b)    Economic losses on all claims in an amount to be determined at trial;

(c)    Compensatory and consequential damages, including, but not limited to, damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(d)    Punitive damages on all claims in an amount to be determined at trial;

(e)    Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(f)    Pre- and post-judgment interest at the lawful rate;

(g)    An order directing the P.O.S.T. Board to permanently revoke Defendants McWhorter's and Gonzales' P.O.S.T. certification after a finding of civil liability for using unlawful force and/or for failing to intervene in such force, pursuant to Colo. Rev. Stat. § 24-31-904(1)(a)(II); and

(h)    Any further relief that this court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

DATED this 21st day of February 2023.

KILLMER, LANE & NEWMAN, LLP

*s /Darold W. Killmer/*
_____
Darold Killmer
Mari Newman
Reid Allison
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001
dkillmer@kln-law.com
mnewman@kln-law.com
rallison@kln-law.com

*Attorneys for Plaintiff*