IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-00473-CNS-MDB

ESTATE OF RICHARD WARD, by and through its personal representative Kristy Ward
Stamp, and
KRISTY WARD STAMP,

      Plaintiffs,

v.

PUEBLO COUNTY SHERIFF DAVID J. LUCERO, in his official capacity;
PUEBLO COUNTY BOARD OF COUNTY COMMISSIONERS;
DEPUTY CHARLES MCWHORTER, in his individual and official capacity;
DEPUTY CASSANDRA GONZALES, in her individual and official capacity;
DEPUTY JACOB MAHAN, in his individual and official capacity;
DEPUTY CHRISTINE SPENCER, in her individual and official capacity;
DEPUTY NICOLAS BERUMEN, in his individual and official capacity;
DEPUTY ROBERT QUINTANA, in his individual and official capacity; and
SERGEANT JOSH RAGAN, in his individual and official capacity,

      Defendants.

---

## ORDER

---

This matter comes before the Court on Defendants' Amended Motion to Dismiss
Amended Complaint Pursuant to Fed. R. Civ. P. 12 and Fed. R. Civ. P. 8 (ECF No. 55).
For the following reasons, the Court GRANTS IN PART and DENIES IN PART the motion.

## I.  BACKGROUND

This action arises from an alleged excessive force incident in which Pueblo County
Sheriff's Office ("PCSO") deputies shot and killed Richard Ward, then arrested his mother,

Kristy Ward Stamp, and seized her personal property. The facts underlying this incident are fully set forth in the Court's Order on Defendants' first motion to dismiss (*see* ECF No. 46 at 2–6). Notably, the factual allegations surrounding Defendants' conduct on the day Mr. Ward was killed appear to be substantially unchanged between Plaintiffs' original and amended complaints (*compare* ECF No. 1, *with* ECF No. 49; *see also* ECF No. 50-1 (redlined version)). Likewise, the claims alleged against Defendants are largely identical, save for the substitution of Defendant Sheriff David J. Lucero, in his official capacity, and Defendant Pueblo County Board of County Commissioners ("BOCC") for former Defendant Pueblo County (*see id.*).

After Plaintiffs amended their complaint, Defendants filed their second motion to dismiss, arguing that (i) BOCC is not a proper defendant because a sheriff, not a board of county commissioners, is subject to municipal liability for constitutional violations committed by sheriff's deputies; (ii) the Individual Defendants are entitled to qualified immunity from any claims brought under 42 U.S.C. § 1983; and (iii) the state law claims fail to sufficiently allege each Individual Defendants' personal participation in the violation of Plaintiffs' constitutional rights (*see* ECF No. 55 at 3–15). The motion is now fully briefed (*see* ECF Nos. 62, 67), and the Court heard oral argument regarding the motion on December 19, 2023 (*see* ECF No. 87).

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable

to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III.  ANALYSIS

Having considered the motion and related briefing, the parties' oral argument, the entire case file, and relevant legal authority, the Court grants in part and denies in part Defendants' second motion to dismiss.

### A.  BOCC as a Named Defendant

In its Order on Defendants' first motion to dismiss, the Court held that "Pueblo County" was not properly named as a defendant for *Monell* liability purposes; in so holding, the Court granted Plaintiffs leave to substitute BOCC and Sheriff Lucero as appropriate municipal defendants (*see* ECF No. 46 at 7–8). Now that this substitution has

been made in the amended complaint, Defendants argue, as a matter of law, that BOCC is not a proper defendant because Sheriff Lucero "is an independent official separate and distinct from the Board and he, to the exclusion of the BOCC, is responsible for his official acts and the acts of his deputies" (ECF No. 55 at 6; *see id.* at 3–7). Pursuant to its prior Order on this issue, the Court disagrees.

Previously, the Court observed that the circumstances of this case raise the question earlier posed in *Chavez v. Board of County Commissioners of Lake County, Colorado*, 426 F.Supp.3d 802 (D. Colo. 2019)—"Who is the proper defendant to a § 1983 lawsuit alleging an injury caused by a policy or practice of the county sheriff? The sheriff's office, or the county itself (through its board of commissioners)?" (ECF No. 46 at 8 n.2 (quoting *id.* at 808)). At that time, the Court noted the apparent disagreement among the courts of this District as to whether a county sheriff's office is suable separately from a county's board of commissioners (*see id.* (citing *Watkins v. Douglas Cnty.*, No. 20-cv-01172-RM-MEH, 2020 WL 8408482, at *14–15 (D. Colo. Sept. 15, 2020), *report and recommendation adopted*, 2021 WL 100117 (D. Colo. Jan. 12, 2021) (collecting cases and explaining split in authority))). And ultimately agreeing with *Chavez*, the Court concluded that at the Rule 12(b)(6) stage, where "a *Monell* claim is based on a sheriff-made policy, any distinction between suing the sheriff's office versus suing the county becomes purely theoretical," since the county would pay any money judgment regardless (*see id.* (citing *Chavez*, 426 F.Supp.3d at 813)). Even after the amended complaint's filing, this conclusion remains unchanged.

"In federal court, a municipal entity's '[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located.'" *Chavez*, 426 F.Supp.3d at 809 (quoting Fed. R. Civ. P. 17(b)(3)). And invoking various Colorado statutory and constitutional provisions, Defendants argue that the county sheriff's office is an independent municipal entity with exclusive authority over sheriff's deputies and, thus, is answerable in suit for those deputies' conduct independently from the county board of commissioners. Defendants observe, for instance, that a county sheriff is elected separately from the board of commissioners, and that a county sheriff exercises full control over the hiring and firing of his deputies (*see* ECF No. 55 (citing Colo. Const. art. XIV, § 6; C.R.S. § 30-10-506)). Defendants further echo *Chavez*'s observation that the Tenth's Circuit's decision in *Bristol v. Board of County Commissioners of County of Clear Creek*, 312 F.3d 1213 (10th Cir. 2002), "makes no sense if a sheriff's office is not separately suable."[1] (*see id.* (quoting *Chavez*, 426 F.Supp.3d at 810)).

Based on this authority, the Court is inclined to agree with Defendants that a county sheriff's office may be subject to suit separately from a county board of commissioners. Defendants' briefing, however, only answers the question whether the sheriff alone is a

---

[1] Presented with the question whether the board of county commissioners was a deputy's "joint employer" alongside the sheriff's office or, alternatively, whether the sheriff's office and board of county commissioners were effectively a "single employer" for purposes of the deputy's ADA employment discrimination suit, the *Bristol* court held that neither were true. Observing that Colorado law gives sheriff's offices exclusive control over the hiring and firing of deputies, and further noting that no evidence had been presented to suggest that the board had exercised any authority over the sheriff's employment decisions, the Tenth Circuit remanded the case to the district court with instructions to dismiss the board from the action. *See Bristol*, 312 F.3d at 1219–21. The implication from *Bristol*, then, was that "a lawsuit against the sheriff's office only is a legitimate lawsuit." *Chavez*, 426 F.Supp.3d at 810.

proper municipal defendant for § 1983 purposes when a deputy commits a constitutional violation pursuant to policy or custom—it does not answer whether the sheriff is the *only* proper municipal defendant for such purposes. Indeed, the *Chavez* court noted the very same analytical problem: "simply because a Colorado's sheriff's office has capacity to be sued apart from its corresponding county does not necessarily mean that it is the proper defendant, to the exclusion of the county, in a *Monell* action alleging an injury caused by a policy attributable to the sheriff." *Chavez*, 426 F.Supp.3d at 810.

Not to be deterred, Defendants insist that "sheriffs have the exclusive right to control their deputies and, as a logical corollary, are solely responsible for their official acts" (ECF No. 55 at 4). The statute Defendants rely on for this proposition, however, establishes only that "[e]ach sheriff may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will." C.R.S. § 30-10-506. This statutory hiring and firing power does not establish as a matter of law that the sheriff is the final policymaker over the county such that he alone is liable in a *Monell* action for an injury inflicted pursuant to an unconstitutional policy.

What the Court is left with, then, is the conclusion earlier reached in *Chavez*. Presently, it is at best unclear whether Colorado law makes sheriffs exclusive policymakers over counties. *See Chavez*, 426 F.Supp.3d at 812–13 (analyzing Colorado statutory and constitutional authorities covering the creation of sheriff's offices, the sources of their funding, and the scope of the offices' authority as compared with their corresponding counties). At the Rule 12(b)(6) stage, however, the answer to this question is largely academic. *See id.* at 813; *accord Watkins*, 2020 WL 8408482, at *14–15. In the

event of a verdict in Plaintiffs' favor, Pueblo County would be required by statute to pay any judgment, so the only possible significance dismissing BOCC might have is in the scope of discovery. *See Chavez*, 426 F.Supp.3d at 813 (citing C.R.S. § 30-25-104(1)). In turn, no such dismissal is warranted if, as here, the scope of the parties' discovery would be unchanged.[2] *See id.*

All of this to say—Defendants' argument that the challenged municipal policies in this case are attributable to Sheriff Lucero rather than to BOCC is likely better suited to the summary judgment phase. As this Court earlier ruled, "[i]f discovery later reveals that only the sheriff was involved in promulgating the policies at issue in this case, the Court will revisit the question of which defendants should be properly named or dismissed" (ECF No. 46 at 8 n.2). *See Chavez*, 426 F.Supp.3d at 812 ("*[I]f* a Colorado sheriff is a final policymaker for the entire 'body corporate and politic' known as 'the county,' . . . then the county may be held liable in a § 1983/*Monell* lawsuit for an injury inflicted by an unconstitutional sheriff-made policy.") (emphasis in original). At the close of discovery and at the time of summary judgment, Plaintiffs will need to explain clearly the policy at issue and the policymaker(s) to whom the policy is attributable. For now, though, such precision is unnecessary. *See Walker v. Zepeda*, No. 1:11-cv-01242-DME-CBS, 2012 WL 13285403, at * 5 (D. Colo. May 29, 2012) ("[A] plaintiff, as an outsider to municipal government, is not expected to have information about a [county's] official policies, practices, or training programs at the pleading stage.").

---

[2] At oral argument, the parties represented that discovery in this action is already nearing completion.

For these reasons, Defendants' motion is denied to the extent that it seeks to dismiss BOCC from the action.

### B. Qualified Immunity as to Plaintiffs' § 1983 Claims

Defendants next argue that the Individual Defendants are entitled to qualified immunity against Plaintiff's four claims brought under § 1983—excessive force, unlawful arrest, unlawful property seizure, and retaliation (*see* ECF No. 55 at 7–14).

In their first motion to dismiss, Defendants merely recited the elements of qualified immunity and then insisted, without any supporting argument or citation to authority, that the doctrine applies in this case (*see* ECF No. 17 at 12–14). The Court rejected Defendants' qualified immunity argument as not adequately raised (*see* ECF No. 46 at 18–20). Now, in their second motion to dismiss, Defendants have engaged in a full-throated qualified immunity analysis as to Plaintiffs' federal claims. However, given that this Court already ruled on Defendants' qualified immunity argument based on the exact same factual allegations (*compare* ECF No. 1, ¶¶ 114–36, 169–79, 194– 205, 219–31, *with* ECF No. 49, ¶¶ 115–37, 170–80, 195–206, 220–32), Defendants' renewed argument is an improper second bite at the apple. As such, the Court will not revisit its earlier

qualified immunity ruling as to Claim One (Fourth Amendment excessive force)[3] or Claim Six (Fourth Amendment unlawful property seizure). *See Rocky Mountain Wild v. Dallas*, 636 F.Supp.3d 1289, 1302–03 (D. Colo. 2022) ("Law of the case doctrine permits a court to decline the invitation to reconsider issues already resolved earlier in the life of a litigation.").

Defendants' assertion of qualified immunity as to Claim Four (Fourth Amendment unlawful arrest) and Claim Eight (First Amendment retaliation) does merit consideration, however. In its Order on Defendants' first motion to dismiss, the Court dismissed Claims Four and Eight for improper group pleading in violation of Rule 8 (*see* ECF No. 46 at 14–18). Thus, arguably, Defendants did not have an opportunity to properly raise a qualified immunity defense to—and the Court's qualified immunity ruling did not extend to—those particular claims. The Court will therefore apply the two-part qualified immunity test to Claims Four and Eight.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as

---

[3] Separately, even if the Court were inclined to analyze the qualified immunity defense as to the Fourth Amendment excessive force claim for a second time, Defendants in this round of briefing held back the bulk of their substantive arguments regarding this claim until their reply brief (*compare* ECF No. 55 at 9–14, *with* ECF No. 67 at 4–8). Courts generally consider issues raised for the first time in a reply brief to be waived. *See, e.g.*, *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016); *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011). Indeed, "it is inequitable and improper for a party, although raising the bare bones of an argument in its opening brief, to reserve a fully developed presentation of that argument for the reply, when the opposing party has no meaningful opportunity to respond." *Pub. Serv. Co. of Colo. v. Bd. of Cnty. Comm'rs of San Miguel Cnty.*, No. 04-cv-01828-REB-CBS, 2006 WL 8454233, at *1 (D. Colo. Jan. 27, 2006). Denial of Defendants' request for qualified immunity as to the excessive force claim would therefore have been appropriate on this basis alone.

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F.Supp.3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1249 (10th Cir. 2008). When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).

### 1.  Claim Four (Fourth Amendment Unlawful Arrest)

Defendants argue that the Individual Defendants are entitled to qualified immunity as to Plaintiffs' Fourth Amendment unlawful arrest claim. As set forth below, the Court disagrees.

### a.  "Constitutional violation" prong

As an initial matter, the parties dispute whether the facts pleaded in the amended complaint show that Ms. Ward Stamp was "arrested"—Plaintiffs maintain that she was placed under arrest, while Defendants suggest that she was merely subjected to an investigative detention. *See Muehler v. Mena*, 544 U.S. 93, 100 (2005) (explaining that detaining individuals under intrusive conditions does not automatically convert the detention to a full-blown custodial arrest); *but see United States v. Melendez-Garcia*, 28

10

F.3d 1046, 1052 (10th Cir. 1994) (the use of handcuffs generally converts a detention into an arrest). Regardless, the amended complaint alleges that after the shooting, the Individual Officers handcuffed Ms. Ward Stamp, searched her person, placed her in a locked police vehicle, and subjected her to an interrogation at a PSCO facility for two hours (*see* ECF No. 49, ¶¶ 87, 88, 90, 92). There thus appears to be no dispute that Ms. Ward Stamp was "seized" in a manner triggering the Fourth Amendment's reasonableness analysis. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) ("The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest."); *accord Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person . . . .").

When deciding whether a seizure is reasonable, a court must weigh "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown v. Texas*, 443 U.S. 47, 51 (1979). "[T]he Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual . . . ." *Id.* Here, at oral argument, Defendants vacillated between two general rationales for the seizure: (i) to control the crime scene and obtain information from Ms. Ward Stamp, since she was a witness to her son's shooting; and (ii) to investigate Ms. Ward Stamp's potential involvement in her son's suspected criminal activity, since law enforcement had responded to a report of Mr. Ward trying to open car doors in an apparent attempt at vehicle theft (*see also* ECF No. 55 at 9–11).

At the Rule 12(b)(6) stage, the Court declines to consider the latter rationale as an improper matter outside the complaint. Indeed, the amended complaint pleads no facts indicating that Ms. Ward Stamp did anything other than sit motionless in her own car until the Individual Defendants detained her post-shooting (*see* ECF No. 49, ¶¶ 25–29, 79–98). Similarly, the pleading indicates that Ms. Ward Stamp was a target of the deputies' investigation only after *Mr. Ward was shot*, not before, when the purpose of the law enforcement encounter was centered around *Mr. Ward opening nearby car doors* (*see id.*). As such, the Court will not conduct the Fourth Amendment reasonableness analysis based on Defendants' *post hoc* allegation that Ms. Ward was herself suspected of criminal activity. *See Allen v. Exec. Dir. of Colo. Dep't of Corr.*, No. 20-cv-002260-WJM-KLM, 2020 WL 8408479, at *2 (Rule 12(b)(6) is designed only to "test[ ] the sufficiency of the allegations of within the four corners of the complaint") (citation omitted).

That leaves Defendants' other rationale for Ms. Ward Stamp's detention—that seizing her was reasonable as a means of obtaining information from her as a witness to Mr. Ward's shooting (*see* ECF No. 55 at 9 ("It is undisputed that Kristy Ward Stamp was a passenger in her vehicle where Richard Ward was also located and was a potential witness.")). Regarding the *scope* of this witness detention, the Court is unconvinced. As an initial matter, the Tenth Circuit observed in *Walker v. City of Orem* that law enforcement likely "have less authority to detain those who have witnessed a crime for investigatory purposes than to detain criminal suspects," and "some courts have [even] prohibited the involuntary detention of witnesses to a crime." 451 F.3d 1139, 1148 (10th Cir. 2006); *accord Illinois v. Lidster*, 540 U.S. 419, 427 (2004) (witness detentions are confined to the

type of brief stops that "interfere[ ] only minimally with liberty"). In *Walker*, officers shot and killed a man in a residential driveway as his family members watched from the home's front porch. *See Walker*, 451 F.3d at 1144–45. After the shooting, the officers prevented the family members from approaching the victim—instead, they pointed guns at the family members and required them to remain in the home for questioning for nearly 90 minutes. *Id.* at 1145. Under those circumstances, the Tenth Circuit held that a 90-minute detention of witnesses not suspected of criminal activity violated the Fourth Amendment, reasoning that the detention "was unreasonable and was not justified by either the need for investigation of a crime or control of a crime scene." *Id.* at 1150.

Similarly, in *Maxwell v. County of San Diego*, the Ninth Circuit considered the reasonableness of a five-hour detention of witnesses to a crime. *See* 708 F.3d 1075, 1083 (9th Cir. 2013). It reasoned that "[a]lthough detention of witnesses for investigative purposes can be reasonable in certain circumstances, such detentions must be minimally intrusive," and that even in a context where criminal activity was suspected, the "Supreme Court has never endorsed a detention longer than 90 minutes." *Id.* at 1083, 1084. Under the circumstances, the Ninth Circuit held that a five-hour suspicionless detention of a witness was unreasonable. *Id.* at 1084.

In yet another similar case, *Lincoln v. Scott*, SWAT officers shot and killed an armed man in front of his daughter, then physically removed the daughter from the home, handcuffed her, locked her in the back of a police vehicle for two hours, and then interrogated her at the police station for another two hours. 887 F.3d 190, 192–93 (5th Cir. 2018). There, the Fifth Circuit reasoned that although it may have been reasonable

for the officers to detain the daughter for some amount of time to determine her role in the incident, the officers exceeded this authority when they confined her in the police car for two hours. *Id.* at 197 (citation omitted). Similarly, although it may have been reasonable for the officers to remove the daughter from the scene for safety reasons, "it [did] not necessarily follow that they had unbound authority to hold her for roughly four hours, notably without probable cause." *Id.*

All told, the Court finds *Walker*, *Maxwell*, and *Lincoln* to be highly instructive given the circumstances of this case. As noted above, the amended complaint alleges that the Individual Defendants handcuffed,[4] confined, and interrogated Ms. Ward Stamp—a non-suspect witness—for at least two hours after her son was shot. Further, the amended complaint does not suggest that she herself was suspected of any criminal activity when the shooting occurred. The Court thus finds that Plaintiffs have sufficiently alleged a violation of Ms. Ward Stamp's Fourth Amendment rights regarding her wrongful detention.

### b.  *"Clearly established" prong*

Having found that Plaintiffs have stated a Fourth Amendment violation by alleging Ms. Ward Stamp's prolonged detention without probable cause, the Court must now determine whether that right was "clearly established" at the time of the Individual Defendants' conduct. The Court concludes that it was.

---

[4] At oral argument, Defendants explained that Ms. Ward Stamp was handcuffed upon her placement in the patrol vehicle pursuant to PCSO policy. Police policy, however, does not control the Court's analysis of the Individual Defendant's liability for a constitutional violation. *Cf. Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 592 (10th Cir. 1999). Indeed, particularized suspicion that a detainee is dangerous is required in order to justify handcuffs or other restraints in an investigative detention. *See Melendez-Garcia*, 28 F.3d at 1052–53.

Regarding this second qualified immunity prong, a right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196–97 (10th Cir. 2010)). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999). While a plaintiff need not cite a case directly on point, he still must show that the law would have informed a reasonable officer in the defendant's position that his conduct was unlawful in that situation. *See Knopf v. Williams*, 884 F.3d 939, 949 (10th Cir. 2018) (citation omitted).

Pertinent here, in *Walker*, the Tenth Circuit determined that back in 1998, the officers had not violated clearly established law by forcefully detaining witnesses without suspicion following an officer-involved shooting. *See Walker*, 451 F.3d at 1151 ("[W]e have found no pertinent Supreme Court . . . decision prior to the events in question, and no clearly established weight of authority from other courts, that would have made the unlawfulness of the officers' conduct apparent to them."). As noted above, however, the *Walker* court did determine that detention of witnesses under these circumstances violated the Fourth Amendment. *Id.* at 1150. Thus, in this case, when the Individual Defendants seized Ms. Ward Stamp under substantially identical post-shooting conditions in 2023, the Tenth Circuit's decision in *Walker* (as well as the weight of persuasive authorities from other circuits, such as *Maxwell* and *Lincoln*) gave them ample

15

notice that seizing a non-suspect witness for an extended period of time, even for otherwise legitimate investigative purposes, would violate the witness's Fourth Amendment rights.[5] As such, Ms. Ward Stamp's right not to be unreasonably detained as a witness was clearly established at the relevant time.

\* \* \*

Having found both that the amended complaint sufficiently alleges a Fourth Amendment unlawful arrest, and that Ms. Ward Stamp's Fourth Amendment rights were clearly established, the Court concludes that the Individual Defendants are not entitled to

---

[5] Other similar, albeit less squarely on point, Tenth Circuit authority tends to bear out this conclusion. For instance, in *Manzanares v. Higdon*, officers handcuffed a non-suspect informant and locked him in the back of a patrol vehicle for at least three hours (and possibly as long as seven hours) in order to prevent him from impeding the officers' investigation on scene. 575 F.3d 1135, 1141 (10th Cir. 2009). In the informant's subsequent § 1983 action, the Court determined that the officers were not entitled to qualified immunity, because (i) the informant's prolonged restraint in handcuffs and confinement in the squad car constituted an arrest without probable cause in violation of the Fourth Amendment, and (ii) in light of relevant Tenth Circuit case law, "any reasonable officer would understand that it is unconstitutional to handcuff someone absent probable cause or an articulable basis to suspect a threat to officer safety combined with reasonable suspicion." *Id.* at 1149–50.

Likewise, in *Cortez v. McCauley*, sheriff's deputies responding to a report of child sexual abuse physically escorted a non-suspect babysitter out of the house late at night, confiscated her cell phone, placed her in the back seat of a locked patrol car, and interrogated her. 478 F.3d 1108, 1122–23 (10th Cir. 2007). Analyzing the babysitter's § 1983 claim under the rubric of Fourth Amendment excessive force, the Court ruled that the deputies were not entitled to qualified immunity, because (i) the deputies' physical confinement of the babysitter bore no relationship to the purported need to secure their own safety, and (ii) pertinent here, "[u]nder prior case law in the Tenth Circuit, officers are required to articulate specific justifications for uses of force during an investigative detention, *such as locking a person in a police car*," but the deputies in that case could not do so. *Id.* at 1131 (emphasis added).

qualified immunity as to this claim. Defendants' motion to dismiss is therefore DENIED as to Claim Four.

### 2.  Claim Eight (First Amendment Retaliation)

Defendants also assert qualified immunity as to Plaintiffs' First Amendment retaliation claim, in connection with the Individual Defendants having allegedly arrested Ms. Ward Stamp and confiscated her property in retaliation for her expressions of shock and grief following the shooting. Here, the Court agrees that Plaintiffs have not pleaded sufficient factual content (if true) to show that Defendants violated Ms. Ward Stamp's First Amendment rights.

In order to establish a retaliation claim for speech protected by the First Amendment, a plaintiff must demonstrate "(1) that he was engaged in a constitutionally protected activity; (2) that the defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's actions were substantially motivated as a response to plaintiff's exercise of his . . . speech rights." *Sgaggio v. Diaz*, No. 22-cv-02043-PAB-MDB, 2023 WL 6064599, at *3 (D. Colo. Sept. 18, 2023) (citing *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). In turn, to plead this third "motivation" element, a plaintiff must allege facts showing that the protected speech played a substantial part in the defendant's decision to take actions adverse to the plaintiff. *See Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005). The amended complaint, however, merely parrots the "motivation" element (ECF No. 49, ¶ 227 ("Defendants' retaliatory actions were substantially motivated by [Ms. Ward Stamp's] exercise of her First Amendment rights.")). It does not allege specific facts

linking the Individual Defendants' actions on scene to Ms. Ward Stamp's verbal expressions of outrage at her son's shooting, nor does it even identify *what* Ms. Ward Stamp said that would have spurred the deputies to arrest her and seize her property. Indeed, at oral argument, Plaintiffs appeared to concede a factual difficulty regarding the motivation element—it is difficult to fathom how Ms. Ward Stamp could have been arrested for her verbal outpouring of grief when she was not informed of her son's death until *after* her release from detention.

In short, Plaintiffs have failed to allege that the Individual Defendants committed retaliatory acts in response Ms. Ward Stamp's First Amendment protected speech. Accordingly, the Court concludes, without reaching the "clearly established" prong, that Plaintiffs have not carried their two-part burden in the qualified immunity analysis as to Claim Eight. This claim is therefore dismissed without prejudice.

### C. Pleading Sufficiency of Plaintiffs' State Law Claims

Finally, Defendants argue that Plaintiffs' state law claims "have merely alleged violations in a group setting," and that they lack the required specificity under Federal Rule of Civil Procedure 8 as to what each Individual Defendant did after the shooting that allegedly violated Plaintiffs' constitutional rights (*see* ECF No. 55 at 14; *see id.* at 14–15). Put differently, Defendants maintain that Plaintiffs have engaged in impermissible "group pleading" in their state law claims by making collective allegations against multiple defendants rather than differentiating each officer's conduct on scene. *See* Fed. R. Civ. P. 8(a)(2); *see also Carrado v. Daimler AG*, No. 17-cv-3080-WJM-SKC, 2018 WL

4565562, at *3 (D. Colo. Sept. 24, 2018) (explaining the Rule 8 notice problems attendant with "group pleading").

It appears that the state law claims Defendants identify as deficient under Rule 8 include Claim Five (Colo. Const. art. II, § 7 Unlawful Arrest), Seven (Colo. Const. art. II, § 7 Unlawful Seizure), and Nine (Colo. Const. art. II, § 10 Retaliation), which Plaintiffs have alleged against "All Individual Defendants"—including Defendants McWhorter, Gonzales, Mahan, Spencer, Berumen, Quintana, and Ragan—for their conduct on scene after the shooting (*see* ECF No. 49, ¶¶ 181–94, 207–219, 233–48).[6] Notably, however, Defendants raised this same Rule 8 argument in their first motion to dismiss and relied on nearly identical authority in doing so (*see* ECF No. 17 at 10–12). Here again, Defendants seek a second bite at the apple. For the most part, the Court will not reconsider its earlier ruling as to these claims. *See Rocky Mountain Wild*, 636 F.Supp.3d at 1302–03.

However, at this stage, now that the Court has fully ruled upon and dismissed Plaintiffs' First Amendment retaliation claim, *see supra*, § III.B.2, it appears that dismissal of their state-law retaliation claim is similarly warranted. Claim Nine alleges that Ms. Ward Stamp was arrested and had her property seized in retaliation for her speech expressing

---

[6] While Claims Two (Colo. Const. art. II, § 7 Excessive Force) and Three (Battery Causing Wrongful Death) are also state law claims, they are alleged only against Defendants McWhorter and Gonzales, and Defendant McWhorter, respectively, for their conduct before and during the shooting. Both in their briefing and later at oral argument, Defendants appear to have conceded that the amended complaint had sufficiently alleged Defendant McWhorter's and Defendant Gonzales' liability for Claims Two and Three (*see* ECF No. 55 at 13–14 ("[T]he primary problem with Plaintiffs' allegations is that they fail to include sufficient information as to the personal participation for each of the [I]ndividual Defendants, *other than Deputy McWhorter and Deputy Gonzales.*") (emphasis added).

shock and grief after the shooting (*see* ECF No. 49, ¶¶ 233–48). Pertinent here, Colorado's state-law analogue to the First Amendment states, "[n]o law shall be passed impairing the freedom of speech; every person shall be free to speak, write, or publish whatever he will on any subject." Colo. Const. art. II, § 10. While this free speech protection is broader than that afforded by the First Amendment, it does not follow that the Court's analysis of Plaintiffs' state-law retaliation claim varies from its First Amendment retaliation analysis above—indeed, "the Colorado Supreme Court will analyze a case based solely on the federal Constitution if it falls squarely within its protections." *Sgaggio*, 2023 WL 6064599, at *6 (citation and internal quotation marks omitted). In that light, the Court has not identified, nor have Plaintiffs provided, any reason why the Court's analysis of Claim Nine (a state-law speech retaliation claim) should differ from its analysis of Claim Eight (an analogous retaliation claim under federal law), especially since both claims rely on the same underlying facts (*see* ECF No. 49, ¶¶ 79–98, 220–48). As such, Claim Nine is dismissed without prejudice for the same pleading deficiencies identified in Claim Eight. *See supra*, § III.B.2.

## IV.  CONCLUSION

Consistent with the foregoing analysis, Defendants' Amended Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12 and Fed. R. Civ. P. 8 (ECF No. 55) is GRANTED IN PART and DENIED IN PART, as follows:

1. Claims Eight and Nine are DISMISSED WITHOUT PREJUDICE;

2. The Court grants Plaintiffs leave to amend their complaint within 10 days if the pleading deficiencies in Claims Eight and Nine can be remedied.

3. Defendants' motion is DENIED in all other respects.

DATED this 11th day of January 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge