UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 23-CV-00473-MDB

ESTATE OF RICHARD WARD by and through its personal representative Kristy Ward
Stamp, et al.

      Plaintiffs,

v.

PUEBLO COUNTY SHERIFF DAVID J. LUCERO, in his official capacity, et al.

Defendants.

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Defendants, by and through counsel, THE LANE LAW FIRM, P.C., hereby respond to Plaintiff's Motion for Partial Summary Judgment and, as grounds therefor, states as follows:

## I.    INTRODUCTION

On February 22, 2022, Deputies McWhorter and Gonzales of the Pueblo County Sheriff's Office ("PCSO") responded to Liberty Point International School after a "911" call was placed indicating that a suspicious and aggressive male was checking car doors. After checking doors and acting aggressively to the occupants of at least one vehicle, Richard Ward (hereinafter, "Ward") returned to a white 2008 Lexus RX 350 (the "Vehicle"). The Vehicle was occupied by two other individuals, a male in the driver seat and a female in the front passenger seat wearing a hood and dark sunglasses. After a

brief conversation with Ward, a physical confrontation ensued, and Deputy McWhorter shot and killed Ward.

Following the officer involved shooting (the "OIS"), the Tenth Judicial District Critical Incident Team ("CIT") was activated to investigate the incident. The Pueblo Police Department ("PPD") was designated as the lead investigative agency of the CIT. Following activation of the CIT and PPD's designation as the lead investigator, PCSO no longer retained control of the investigation. CIT determined it was necessary to detain Plaintiff and transport her to the PCSO Annex. Defendants acted on CIT authority and at its direction pursuant to State law, C.R.S. 16-2.5-301; CIT protocol; and PCSO policy. Because genuine issues of material fact exist with respect to Plaintiff's arguments, Plaintiff's Motion should be denied.

II.    RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Admitted[1].

2.    Denied. The Vehicle was not registered to, or owned by, Plaintiff Kristy Ward Stamp. *See* Colorado Vehicle Registration, PCSO002016 ("Exhibit A"); Deposition of L. Ward ("Exhibit B"), at p. 35, ll. 1-9.

3.    Denied. The Vehicle was not owned by, or registered to, Plaintiff. *See* Exhibit A; Exhibit B, at p. 35, ll. 1-9.

4.    Admitted.

5.    Admitted.

---

[1] All facts admitted herein are admitted for the sole and limited purposes of Defendants' Response to Plaintiff's Motion for Partial Summary Judgment.

6.      Denied. The Vehicle was not owned by, or registered to, Plaintiff. *See* Exhibit A; Exhibit B, at p. 35, ll. 1-9.

7.      Admitted.

8.      Denied. The Vehicle was not owned by, or registered to, Plaintiff. *See* Exhibit A; Exhibit B, at p. 35, ll. 1-9.

9.      Admitted.

10.     Admitted.

11.     Denied. The Vehicle was not owned by, or registered to, Plaintiff. *See* Exhibit A; Exhibit B, at p. 35, ll. 1-9.

12.     Denied. The Vehicle was not owned by, or registered to, Plaintiff. *See* Exhibit A; Exhibit B, at p. 35, ll. 1-9. Plaintiff's statement of material fact mischaracterizes Deputy McWhorter's alleged statement. *See* McWhorter Body Worn Camera ("BWC") ("Exhibit C"), at 6:19-6:23.

13.     Defendants admit that Deputy Mahan repeatedly ordered Mr. Brown and Plaintiff to "keep your hands where I can see them." Defendants deny Mr. Brown and Plaintiff complied. *See* Mahan BWC ("Exhibit D"), at 4:38-5:10.

14.     Admitted.

15.     Denied. The Vehicle was not owned by, or registered to, Plaintiff. *See* Exhibit A; Exhibit B, at p. 35, ll. 1-9. Plaintiff's statement of material fact mischaracterizes Deputy Mahan's alleged statement. *See* Exhibit D, at 11:50-12:10.

16.     Denied. Mr. Brown stepped out of the Vehicle at approximately 3:43:20 p.m. *See* Exhibit D, at 13:00-13:39.

3

17.    Denied. The Vehicle was not owned by, or registered to, Plaintiff. *See* Exhibit A; Exhibit B, at p. 35, ll. 1-9.

18.    Admitted.

19.    Denied. Deputy Berumen testified that based on the information he had, he did not *believe* Plaintiff was free to leave at that time. *See* Deposition of Berumen ("Exhibit E"), at p. 133, ll. 9-22.

20.    Admitted.

21.    Admitted.

22.    Admitted.

23.    Denied. Deputy Spencer did not order Plaintiff to sit in the PCSO vehicle. Plaintiff was placed in the PCSO vehicle to stay warm. *See* Spencer BWC ("Exhibit F"), at 16:04-16:23; *see also* Deputy Report for Incident Supplement, Spencer ("Exhibit G").

24.    Admitted.

25.    Admitted.

26.    Denied. Sergeant Ragan did not order the deputies to transfer Plaintiff to Deputy Mahan's PCSO vehicle. *See* Exhibit D, at 18:10-19:20.

27.    Admitted.

28.    Admitted.

29.    Admitted.

30.    Admitted.

31.     Admitted. However, Deputy Mahan testified that Plaintiff was placed in the PCSO vehicle due to the weather. *See* Deposition of Mahan ("Exhibit H"), at p. 131, ll. 12-14.

32.     Denied. Sergeant Ragan responded they should remain handcuffed "for now." *See* Berumen BWC ("Exhibit I"), at 28:30-28:43.

33.     Defendants admit that, at approximately 4:08:45 p.m., Deputy Quintana arrived Liberty Point International School and he briefly spoke with Defendant Berumen who advised him to move Plaintiff to Deputy Quintana's vehicle. Defendants deny that Deputy Berumen made the decision to drive Plaintiff to the PCSO Annex. The order to drive Plaintiff to the PCSO Annex came from other personnel who were in charge of the scene (the CIT). *See* Deposition of Bryant ("Exhibit J"), at p. 49, ll. 20-25, p. 50, l. 1, p. 51, ll. 1-4, p. 63, ll. 18-25, p. 64, ll. 1-25, p. 65, ll. 1-7, p. 67, ll. 13-25, p. 68, ll. 1-22, p. 84, ll. 16-25; *see also* Unsworn Declaration of Captain Shelley Bryant ("Exhibit K").

34.     Admitted. However, Deputy Berumen testified that Plaintiff was not free to leave because she "…still need[ed] to be spoken with by interviewed, more so, by that separate entity, the agency, which I believe was Pueblo Police…" *See* Exhibit E, at p. 185, ll. 21-25, p. 186. l. 1.

35.     Denied. Deputy Mahan did not testify that "Ms. Ward Stamp was not free to leave the scene at any time." Deputy Mahan testified that while she was seated inside a PCSO vehicle, she was not free to leave "at that point." When asked if "… she was ever free to leave…" Deputy Mahan testified, "I don't – I don't know after that point. I cannot speak on afterwards." *See* Exhibit H, at p. 116, ll. 6-15.

5

36.    Denied. Sergeant Ragan testified that, "to his knowledge," there was no point at the scene where Plaintiff was free to leave. *See* Deposition of Ragan ("Exhibit L"), at p. 130, ll. 23-25.

37.    Denied. The order to drive Plaintiff to the PCSO Annex originated from the CIT. PPD was the designated lead investigative agency with decision-making authority and was in charge of investigatory actions at the scene. CIT made the decision to detain Plaintiff and transport her to the PCSO Annex to be questioned by a PPD detective. *See* Exhibit J, p. 49, ll. 20-25, p. 50, l. 1, p. 51, ll. 1-4, p. 63, ll. 18-25, p. 64, ll. 1-25, p. 65, ll. 1-7, p. 67, ll. 13-25, p. 68, ll. 1-22, p. 84, ll. 16-25; Exhibit K.

38.    Admitted. However, Captain Bryant testified that she did not recall instructing Sergeant Ragan to do so. If she did, the order did not originate with her but, rather, from the CIT. The PPD was the lead investigative agency with decision-making authority. CIT made the decision to detain Plaintiff and transport her to the PCSO Annex to be questioned by a PPD detective. *See* Exhibit J, p. 49, ll. 20-25, p. 50, l. 1, p. 51, ll. 1-4, p. 63, ll. 18-25, p. 64, ll. 1-25, p. 65, ll. 1-7, p. 67, ll. 13-25, p. 68, ll. 1-22, p. 84, ll. 16-25; Exhibit K.

39.    Denied. After the OIS occurred involving Pueblo County Sheriff's deputies, PPD was the lead investigatory agency in charge of the investigation with investigative decision-making authority. Captain Bryant was no longer in charge of the investigation. *See* Exhibit J, at p. 49, ll. 20-25, p. 50, l. 1, p. 51, ll. 1-4, p. 63, ll. 18-25, p. 64, ll. 1-25, p. 65, ll. 1-7, p. 67, ll. 13-25, p. 68, ll. 1-22, p. 84, ll. 16-25; Exhibit K.

40.    Admitted.

41.    Admitted.

42.    Admitted.

43.    Admitted.

44.    Admitted.

45.    Denied. Plaintiff's statement of material fact mischaracterizes Plaintiff's alleged statement(s). *See* Quintana BWC ("Exhibit M"), at 11:30-11:44.

46.    Admitted.

47.    Defendants admit that Deputy Quintana testified that between the time he met Plaintiff until he dropped her off in the Annex, he believed Plaintiff was in custody.

48.    Admitted.

49.    Admitted.

50.    Denied. Defendants did not leave Plaintiff alone in the interview room. PPD was the lead investigative agency who was in charge of conducting the investigation. Plaintiff's alleged statements were not made to Defendants. *See* Kristy Ward Stamp Interview Video ("Exhibit N"), at 4:51:25-4:52:14.

51.    Denied. Defendants deny, and Plaintiff does not allege, that these statements were made to Defendants. *See* Exhibit N, at 5:00:50-5:01:33.

52.    Defendants admit that, at approximately 5:27:23 p.m., PPD Detective Carly Gustin and PCSO Detective Amy Liles arrived at the interview room to interview Plaintiff. Detective Liles was, initially, present to observe, as the PPD had taken control of the investigation. Defendants deny that the interview continued until about 5:41:45 p.m., at which point Detective Liles and Detective Gustin left the room. At approximately

7

5:40:27 p.m., Detective Liles left the interview room. Detective Gustin remained to continue Plaintiff's interview. *See* Exhibit N, at 5:27:30; 5:40:27; 5:41:45.

53.    Defendants admit that, at approximately 6:19:06 p.m., PPD Detective Medina, who is not employed by the PCSO, entered the interview room and discussed Plaintiff's cell phone. Defendants deny that the Vehicle was owned by, or belonged to, Plaintiff. *See* Exhibit A; Exhibit B, at p. 35, ll. 1-9; Exhibit N, at 6:19:06.

54.    Admitted. Defendants deny that these statements were made to PCSO personnel or Defendants.

55.    Admitted.

56.    Defendants admit that Deputy Berumen and other PCSO personnel drove Plaintiff and Mr. Brown home, and that Plaintiff exited the PCSO vehicle at approximately 6:56 p.m.

57.    Denied.  The Vehicle was not owned by, or registered to, Plaintiff. *See* Exhibit A; Exhibit B, at p. 35, ll. 1-9.

58.    Defendants admit that they did not make independent determinations that probable cause existed to arrest Plaintiff. Any such determinations were made by the CIT. Executive Summary, Captain Daniel Anderson, PPD ("Exhibit U").

59.    Admitted.

60.    Admitted.

61.    Admitted.

62.    Admitted.

63.    Admitted.

64.    Admitted.

65.    Defendants admit Deputy Spencer testified that there "… was no probable cause learned for her arrest." However, Deputy Spencer testified that there was legal justification to detain Plaintiff. Deposition of Spencer ("Exhibit O"), at p. 56, ll. 18-24.

66.    Admitted.

67.    Admitted.

68.    Admitted.

69.    Admitted.

70.    Admitted. However, Plaintiff was detained and transported to the PCSO Annex at the direction of CIT based on their determination. PPD was the lead investigative agency with decision-making authority. *See* Exhibit J, at p. 49, ll. 20-25, p. 50, l. 1, p. 51, ll. 1-4, p. 63, ll. 18-25, p. 64, ll. 1-25, p. 65, ll. 1-7, p. 67, ll. 13-25, p. 68, ll. 1-22, p. 84, ll. 16-25; Exhibit K; Exhibit U.

71.    Denied. Sheriff Lucero stated there were no changes made to his knowledge. *See* 30(b)(6) Deposition of PCSO ("Exhibit P"), at p. 61, 15-18.

II.    STATEMENT OF ADDITIONAL DISPUTED FACTS ("SADF")

1.    On February 22, 2022, between 3:00 p.m. and 4:00 p.m. local time, the temperature in Pueblo, Colorado was approximately 17 degrees Fahrenheit and by 6:53 p.m., the temperature in Pueblo, Colorado had dropped to approximately 11 degrees Fahrenheit. *See* February 22, 2022 Weather History in Pueblo, Colorado: ("Exhibit Q").

2.    The Pueblo County Sheriff's Office dispatch received at least one "911" call indicating that a white male was attempting to open car doors, that the individual

9

became aggressive with at least one car, and that he appeared to be under the influence of drugs and/or alcohol. *See* "911" Call Recording ("Exhibit R")

3.      The Vehicle was not owned by, or registered to, Plaintiff. *See* Exhibit A; Exhibit B, at p. 35, ll. 1-9.

4.      At approximately 3:28:18 p.m., Deputy McWhorter approached the Vehicle, and Ward swung open the Vehicle's door in anticipation of law enforcement contact. *See* Exhibit C, at 00:25-00:35.

5.      Plaintiff was wearing a hood and dark sunglasses. *See* Exhibit C, at 00:25-00:50.

6.      When Deputy McWhorter asked Ward who his little brother was, Ward could not remember his name. *See* Exhibit C, at 00:30-00:48.

7.      At approximately 3:28:40 p.m., Ward swung his right leg out of the Vehicle indicating to Deputy McWhorter, based on his training and experience, that he was a flight risk and may be about to run. *See* Exhibit C, at 00:45-00:53; *see also* Deposition of Charles McWhorter III ("Exhibit S"), at p. 182, ll. 9-13.

8.      Ward swallowed something and placed his hand into his jacket with a motion indicative of reaching for a weapon. *See* Exhibit C, at 2:15-2:25; *see also* Gonzales BWC ("Exhibit T"), at 00:35-0040.

9.      Immediately following the OIS, the CIT was activated to investigate the incident. The CIT consisted of members of the PPD, PCSO, Colorado State Patrol, CBI, and the DA's Office. The PPD was designated as the lead investigative agency. *See*

Exhibit J, at p. 49, ll. 20-25, p. 50, l. 1, p. 51, ll. 1-4, p. 63, ll. 18-25, p. 64, ll. 1-25, p. 65, ll. 1-7, p. 67, ll. 13-25, p. 68, ll. 1-22, p. 84, ll. 16-25; Exhibit U.

10.    PPD, as the lead investigative agency, had decision-making authority concerning the investigation and had discretion to utilize other law enforcement agencies, including PCSO, to conduct its investigation. *See* Exhibit J, at p. 49, ll. 20-25, p. 50, l. 1, p. 51, ll. 1-4, p. 63, ll. 18-25, p. 64, ll. 1-25, p. 65, ll. 1-7, p. 67, ll. 13-25, p. 68, ll. 1-22, p. 84, ll. 16-25; Exhibit K; Exhibit U.

11.    CIT made the decision to detain Plaintiff and directed PCSO to detain Plaintiff pending further investigation. *See* Exhibit J, p. 49, ll. 20-25, p. 50, l. 1, p. 51, ll. 1-4, p. 63, ll. 18-25, p. 64, ll. 1-25, p. 65, ll. 1-7, p. 67, ll. 13-25, p. 68, ll. 1-22, p. 84, ll. 16-25; Exhibit K; Exhibit U.

12.    CIT made the decision to question Plaintiff at the PCSO Annex rather than at the crime scene in below freezing temperatures. *See* Exhibit J, at p. 49, ll. 20-25, p. 50, l. 1, p. 51, ll. 1-4, p. 63, ll. 18-25, p. 64, ll. 1-25, p. 65, ll. 1-7, p. 67, ll. 13-25, p. 68, ll. 1-22, p. 84, ll. 16-25; Exhibit K.

13.    CIT directed PCSO personnel to transport Plaintiff to the PCSO Annex so PPD could question her concerning the circumstances preceding and surrounding the OIS. *See* Exhibit J, at p. 49, ll. 20-25, p. 50, l. 1, p. 51, ll. 1-4, p. 63, ll. 18-25, p. 64, ll. 1-25, p. 65, ll. 1-7, p. 67, ll. 13-25, p. 68, ll. 1-22, p. 84, ll. 16-25; Exhibit K.

III.    <u>STANDARD OF REVIEW</u>

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."

FED.R.CIV.P. 56(a). The court shall grant summary judgment only when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases in original). "As to materiality, the substantive law will identify which facts are material…[D]isputes over facts that *might* affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*, at 248 (emphasis added). A dispute of material fact is "*genuine*," "… if the evidence is such that a reasonable jury *could* return a verdict for the nonmoving party." *Id.* (emphasis added).

> … [T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

*Id.*, at 248-49. Thus, the availability of summary judgment turns on whether a proper jury question is presented. *See id.*, at 249. At the summary judgment stage, "… the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*

IV.    LEGAL ANALYSIS

**A. Genuine issues of material fact exist which preclude summary judgment as to the legal positions taken by Plaintiff.**

12

Pursuant to C.R.S. § 16-2.5-301,

> Each police department, sheriff's office, and district attorney within the state shall develop protocols for participating in a multi-agency team, which shall include at least one other police department or sheriff's office, or the Colorado bureau of investigation, in conducting any investigation, evaluation, and review of an incident involving the discharge of a firearm by a peace officer that resulted in injury or death, or other use of force by a peace officer that resulted in death. The law enforcement agencies participating need not be from the same judicial district.

C.R.S. § 16-2.5-301(1).

"'A police officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable.'" *Maresca v. Bernalillo County*, 804 F.3d 1301, 1312 (10th Cir. 2015). "Police work often requires officers to rely on the observations, statements, and conclusions of their fellow officers. An officer who is called to the scene to conduct a search incident to arrest is not required to reevaluate the arresting officer's probable cause determination in order to protect herself from personal liability.'" *Id.*, citing *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259-60 (10th Cir. 1998). "This rule makes sense, because '[e]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and … officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.'" *Id.*, citing *Oliver v. Woods*, 209 F.3d 1179, 1191 (10th Cir. 2000). "Accordingly, the 'good faith' defense shields objectively reasonable good faith reliance on the statements of a fellow officer …" *Id.*, citing *Felders ex rel. Smedley v.*

13

*Malcom*, 755 F.3d 870, 882 (10th Cir. 2014) (ellipses added). Additionally, "Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Following the OIS, the CIT was activated to investigate the incident. SADF 9. The CIT consisted of members of the PPD, PCSO, Colorado State Patrol, CBI, and the DA's Office. *Id*. PPD was designated as the lead investigative agency. *Id*. Once PPD was so designated, PCSO was required to step aside to allow PPD to conduct its investigation. SADF 10, 11, 12, 13. PPD had substantive decision-making authority concerning its investigation. *Id*. PPD began its investigation and utilized PCSO members pursuant to Officer-Involved Incident Protocol of the Tenth Judicial District. Neither PCSO, nor Captain Shelley Bryant, PCSO Captain of Investigations, were in charge of, or responsible for, making substantive decisions related to the ongoing investigation. *Id*. CIT directed PCSO, including directions provided to Defendants, to detain Plaintiff and transport her to the PCSO Annex for questioning due to below freezing, and dropping, temperatures in Pueblo, Colorado, accompanied by snowfall. *Id*.; *see also* Exhibits C, D, I, M. Following the OIS, upon PPD's designation as lead investigative agency, Defendants reasonably relied upon CIT's findings, determinations, and directions.

Defendants, and each of them, were legally entitled to rely on PPD's determinations as the lead investigative agency who would, reasonably, be expected to know considerably more than Defendants who were simply directed to detain and/or transport Plaintiff to the PCSO Annex at CIT's direction, concerning the very

determinations made by CIT justifying Plaintiff's detention and transport. Simply put, Defendants reasonably relied upon CIT's indication that it had obtained information necessary to justify Plaintiff's detention and transport to the PCSO Annex. Defendants then detained Plaintiff and transported her to the PCSO Annex on CIT's authority, and at its direction. Defendants who detained Plaintiff and/or transported her to the PCSO Annex did so in good faith, in reasonable reliance upon the authority and direction of CIT, which was led by PPD. Defendants detained and/or transported Plaintiff to the PCSO Annex on the authority and at the direction of CIT, led by the PPD; Plaintiff attempts to establish liability upon a theory of vicarious liability based on the actions of PPD. Genuine issues of material fact exist precluding summary judgment. Therefore, Plaintiff's Motion should be denied.

### B. Defendants' detention of Plaintiff was reasonable under a totality of the circumstances.

#### a.    The Terry stop was reasonable at its inception.

"[The Tenth Circuit] has recognized three types of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *See United States v. Samilton*, 56 F.4th 820, 826 (10th Cir. 2022) citing *United States v. Hammond*, 890 F.3d 901, 904 (10th Cir. 2018). "The second

category – investigative detentions, commonly known as *Terry* stops – includes detention of individuals in vehicles." *Id*.

"Although reasonable suspicion must be more than an 'incohate and unparticularized suspicion or hunch,' 'it is not, and is not meant to be, an onerous standard.'" *Id*., citing *Alabama v. White*, 496 U.S. 325, 329 (1990); *Shaw v. Schulte*, 36 F.4th 1006, 1014 (10th Cir. 2022) (internal citations omitted). "[T]he level of suspicion required is considerably less than proof by a preponderance of the evidence or that required by probable cause.'" *Id*., citing *United States v. Chavez*, 660 F.3d 1215, 1221 (10th Cir. 2011).

> Reasonable suspicion is an objective standard,' and [the Tenth Circuit] 'inquire[s], based on **the totality of the circumstances**, whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate. The detaining officer need only articulate 'some minimal level of objective justification' for the detention. Even if it is more likely that an individual is not involved in criminal activity, an officer still may have reasonable suspicion to stop and detain the individual. 'To satisfy the reasonable suspicion standard, an officer need not rule out the possibility of innocent conduct, or even have evidence suggesting a fair probability of criminal activity.'

*Id*., at 827-28 (brackets and emphasis added).

When Deputies McWhorter and Gonzales arrived at Liberty Point International School and approached the Vehicle occupied by Ward, Mr. Brown, and Plaintiff, the deputies were aware that a suspicious person was checking car doors, at least one of which was occupied, and that the suspect was located in the Vehicle. SADF 2, 4. Plaintiff was seated in the front seat of the Vehicle wearing dark sunglasses and a hood. SADF 5. Within moments of making contact with the Vehicle, Deputies McWhorter and

Gonzales were aware that a suspect matching Ward's description had been checking, and attempting to open car doors in the parking lot of a school where children would soon be released from class. The deputies knew the individual was seated in a Vehicle occupied by Mr. Brown and Plaintiff, who was also wearing dark sun glasses and a hood covering her face, that Ward swung open the door in anticipation of law enforcement contact and that he appeared poised to run, that Ward could not remember his brother's name who they were allegedly on campus to pick up, and that Ward was behaving erratically, possibly under the influence of drugs and/or alcohol. SADF 2, 4, 5, 6, 7, 8. Many of the deputies' concerns are corroborated by the "911" call. *See* Exhibit R. At this time, the deputies reasonably believed that a crime had been or was being committed, and that Plaintiff and Mr. Brown were involved in Ward's actions as lookouts and/or the get-away driver, or, possibly, that Plaintiff and Mr. Brown were Ward's hostages.

Prior to conducting an investigation as to Plaintiff's involvement, the OIS occurred. Clearly, Deputies McWhorter and Gonzales had reasonable suspicion to justify the *Terry* stop at its inception concerning not only Ward, but Plaintiff and Mr. Brown as well. Because Plaintiff's detention was justified at its inception, Plaintiff's Motion should be denied.

      *b.    The duration of the detention and movement of Plaintiff did not convert her detention to an unlawful arrest.*

A "… seizure remains lawful only 'so long as [*unrelated*] inquiries do not measurably extend the duration of the stop.'" *Rodriguez v. U.S.*, 575 U.S. 348, 355

(2015) (brackets in original) (emphasis and ellipses added) citing *Muehler v. Mena*, 544
U.S. 93, 101 (2005) (because *unrelated* inquiries did not 'exten[d] the time [petitioner]
was detained[,] … no additional Fourth Amendment justification … was required').
"Much as a 'bright line' rule would be desirable, in evaluating whether an investigative
detention is unreasonable, common sense and ordinary human experience must govern
over rigid criteria. *U.S. v. Sharpe*, 470 U.S. 675, 685 (1985). "If the purpose underlying a
Terry stop – investigating possible criminal activity – is to be served, the police must
under certain circumstance be able to detain the individual for longer than the brief time
period involved in *Terry* and *Adams*." *Id*., at 685-86. "In assessing whether a detention
is too long in duration to be justified as an investigative stop, [courts] consider it
appropriate to examine whether the police diligently pursued a means of investigation
that was likely to confirm or dispel their suspicions quickly, during which time it was
necessary to detain the defendant." *Id*., at 686 (brackets added).

"The Supreme Court has acknowledged that 'there are undoubtedly reasons for
safety and security that would justify moving a suspect from one location to another
during an investigative detention.'" *U.S. v White*, 584 F.3d 935, 953 (10th Cir. 2009)
citing *Florida v. Royer*, 460 U.S. 491, 504 (1983); also citing *United States v. Charley*,
396 F.3d 1074, 1080 (9th Cir. 2005) "Further, 'police may move a suspect without
exceeding the bounds of an investigative detention when it is a reasonable means of
achieving the legitimate goals of the detention given the specific circumstances of the
case.'" *Id*., citing *Charley*, 396 F.3d at 1080; also citing *U.S. v. Gori*, 230 F.3d 44, 56 (2d
Cir. 2000) ("'[I]t is well established that officers may ask (or force) a suspect to move as

part of a lawful *Terry* stop.'"); *see also Montgomery v. Lore*, 2023 WL 2423325, *4 (D.Colo. 2023) ("… [T]he Supreme Court in *Royer* did not establish a constitutional right to not be relocated during an investigative detention … Even if plaintiff had argued that the movement converted his stop into an unlawful arrest, the Court would reject this argument … White, 584 F.3d at 953, *supra*]") (brackets and ellipses added).

The alleged duration of Plaintiff's detention and movement between vehicles and the PCSO Annex did not convert her detention to an unlawful arrest because CIT diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, no *unrelated inquiries* extended the duration of her detention, and her movement was reasonably necessary to achieve the legitimate goals of the detention, given the specific circumstances of the case. *See Rodriguez,* 575 U.S. at 355; *White*, 584 F.3d at 953. In this matter, the stop was made to investigate suspected criminal activity, i.e. suspected theft, robbery, vehicle theft. As the investigation commenced, the OIS occurred. Plaintiff was removed from the Vehicle and temporarily detained prior to CIT's investigation of her involvement in the earlier alleged criminal activity and subsequent OIS. Defendants did not utilize the deputies' initial stop of Plaintiff to investigate/inquire into unrelated criminal activity, nor did Plaintiff's detention exceed the time required to investigate the alleged criminal activity that initiated Defendants' contact, considering the interruption caused by the OIS. After establishing control of the crime scene, when PPD was capable of continuing its investigation, the temperature in Pueblo, Colorado was approximately 17 degrees Fahrenheit. SADF 1. PPD, as the lead investigative agency, simply could not question Plaintiff *at* the scene in

below freezing temperatures, while the CIT processed the crime scene. Because unrelated inquiries did not measurably extend Plaintiff's detention, and her movement between PCSO vehicles and the PCSO Annex were reasonable to achieve the legitimate goals of the detention given the specific circumstances of the case, i.e. the OIS, the duration of Plaintiff's detention, and her movement, did not convert her detention to unlawful arrest. Therefore, Plaintiff's Motion should be denied.

### C. Plaintiff's municipal liability claim fails because Defendants did not violate Plaintiff's constitutional or statutory rights.

Plaintiff's Motion seeks summary judgment on the basis of municipal liability against Sheriff Lucero in his supervisory capacity as the Sheriff of Pueblo County and must, therefore, demonstrate "an affirmative link between the supervisor's conduct and the constitutional deprivation." *Holland ex. re. Overdorff v. Harrington*, 268 F.3d 1178, 1187 (10th Cir. 2001). A plaintiff "must show that a supervisory defendant, expressly or otherwise, authorized, supervised, or participated in conduct which caused the *constitutional deprivation*." *Id.* (*emphasis added*); *Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)). Because the individual Defendants did not violate Plaintiff's constitutional rights, Plaintiff cannot establish an affirmative link between Sheriff Lucero's conduct and any alleged deprivation. Therefore, Plaintiff's Motion should be denied.

WHEREFORE, Defendants request this Honorable Court deny Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted this November 15, 2024.


By:    s/    *Sean J. Lane*
              Sean J. Lane, Esq.
              William O'Donnell, Esq.
              **THE LANE LAW FIRM, P.C.**
              3131 S Vaughn Way, Suite 220
              Aurora, Colorado 80014
              Tel:  720-464-4215
              Email: slane@lanelawpc.com
                     wodonnell@lanelawpc.com
              ATTORNEYS FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this November 15, 2024, a true and correct copy of the above and foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was, unless otherwise indicated, filed electronically with the Court who provides notice to the following:

Darold Killmer, Esq.
Reid Allison, Esq.
Killmer Lane, LLP
1543 Champa St Suite 400
Denver CO 80202
Tel:  303-571-1000
Fax:  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
Email:  dkillmer@killmerlane.com
Email:  rallison@killmerlane.com


Mari Newman, Esq.
Andy McNulty, Esq.
Madeline Leibin, Esq.
Newman McNulty, LLC
1490 N Lafayette Street Suite #04
Denver, CO 80218
Tel: 720-850-5770
mari@newman-mcnulty.com
andy@newman-mcnulty.com
madeline@newman-mcnulty.com


*A Duly Signed Original is on File at The Lane Law Firm, P.C.*

s/    *Sarah Merrill*
Sarah Merrill