IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-00473-CNS-MDB

ESTATE OF RICHARD WARD, by and through its personal representative Kristy Ward Stamp and
KRISTY WARD STAMP,

    Plaintiffs,

v.

PUEBLO COUNTY, COLORADO;
DEPUTY CHARLES MCWHORTER, in his individual and official capacity;
DEPUTY CASSANDRA GONZALES, in her individual and official capacity;
DEPUTY JACOB MAHAN, in his individual and official capacity;
DEPUTY CHRISTINE SPENCER, in her individual and official capacity;
DEPUTY NICOLAS BERUMEN, in his individual and official capacity;
DEPUTY ROBERT QUINTANA, in his individual and official capacity; and
SERGEANT JOSH RAGAN, in his individual and official capacity,

    Defendants.

## ORDER

Before the Court are Plaintiffs' and Defendants' summary judgment motions. ECF No. 131; ECF No. 150. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion. The Court GRANTS IN PART and DENIES IN PART Defendants' motion. In doing so, the Court presumes the parties' familiarity with this case's procedural background, their summary judgment briefing and attendant evidentiary submissions, and the legal standard governing the Court's analysis of their summary judgment motions. The Court addresses the parties' motions in turn.

1

## I.   ANALYSIS

**A. Plaintiff's Partial Summary Judgment Motion**

Plaintiffs seek summary judgment on her fourth and fifth claims for relief for unlawful arrest. *See, e.g.,* ECF No. 131 at 3. Resisting, Defendants contend genuine issues of material fact preclude summary judgment. *See, e.g.,* ECF No. 136 at 12. The Court agrees with Plaintiffs that summary judgment is proper.

   *1. The "Good Faith" Defense*

As a preliminary matter, Defendants assert the "good faith" defense to Plaintiff's "legal positions," ECF No. 136 at 12, fundamentally arguing that Defendants were "legally entitled to rely on" the Critical Incident Team's (CIT's) "indication that it had obtained information necessary to justify [Ms. Ward Stamp's] detention and transport" to the Pueblo County Sheriff's Office, *id.* at 13. The Court agrees with Plaintiffs that Defendants are not entitled to the "good faith" defense. *See* ECF No. 145 at 7.

"[T]he 'good faith' defense shields objectively reasonable good faith reliance on the statements of a fellow officer." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 882 (10th Cir. 2014). Evidence does not show Defendants' claimed reliance on CIT's "indication that it had obtained information necessary to justify [Ms. Ward Stamp's] detention and transport," ECF No. 136 at 15, was objectively reasonable, *Felders*, 755 F.3d at 882. Indeed, Defendants admit the following facts from Plaintiffs' summary judgment brief:

- Defendant Captain Bryant "agreed that there was never probable cause" to arrest Ms. Ward Stamp,

2

- Defendant Berumen "did not have probable cause at the time of the contact" with Ms. Ward Stamp, and

- Defendant Quintana "agreed that there was no probable cause to believe" that Ms. Ward Stamp "had committed or was committing any criminal offense."

*Compare* ECF No. 131 at 11–12, *with* ECF No. 136 at 8–9.

Assuming the CIT and Pueblo Police Department (PPD) communicated to Defendants, there can hardly be any "good faith" reliance on any information coming from the CIT and PPD when these Defendants undisputably concluded that there was no probable cause to detain Ms. Ward Stamp. As Defendants' admission of these material facts show, no "reasonable police officer in [Defendants'] position [would] conclude [officers] had probable cause" to think Ms. Ward Stamp had or was committing a crime. *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 883 (10th Cir. 2014); *Stearns v. Clarkson*, 615 F.3d 1278, 1285 (10th Cir. 2010)

Accordingly, based on the summary judgment record and Defendants' unqualified admissions to Plaintiffs' undisputed statement of facts, Defendants are not entitled to the "good faith" defense as an excuse for their conduct. No reasonable jury could find Defendants' assumed reliance on information from the CIT and PPD was in "good faith" when they undisputedly concluded there was no probable cause to arrest Ms. Ward Stamp. *See Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010).

2. *Clearly Established Rights*

Plaintiffs argue that Defendants violated Ms. Ward Stamp's clearly established Fourth Amendment rights, *see* ECF No. 131 at 13, based Defendants' detainment of Ms.

3

Ward Stamp, which Plaintiffs contend constituted an unlawful arrest, *id.* at 15. Defendants counter Ms. Ward Stamp's detention was reasonable, ECF No. 136 at 15, and that its length does not convert this reasonable detention into an unlawful arrest, *id.* at 17. The Court agrees with Plaintiff: Undisputed facts show Defendants lacked probable cause to detain Ms. Ward Stamp, and the length of her detention rose to the level of an unlawful arrest.

As a preliminary matter, and as indicated above, it is undisputed that Defendants lacked probable cause to detain Ms. Ward Stamp. Given the absence of any material factual dispute on this point, the Court turns to whether her detention—absent this probable cause—rises to the level of an unlawful arrest in violation of her clearly established constitutional rights.

It does. Plaintiffs are correct to argue it is undisputed Defendant McWhorter's shooting resulted in the death of Ms. Ward Stamp's son—Defendants admit this statement of material fact, and describe the event as an officer involved shooting throughout their response. *Compare* ECF No. 131 at 4, *with* ECF No. 136 at 3. And following this, Defendants admit the following facts, rendering them undisputed:

- That 35 seconds after the shooting, Defendant McWhorter told Ms. Ward Stamp to "Stay in the car,"
- Defendant Mahan testified she was "not free to leave at this point,"
- Ms. Ward Stamp was "escorted" to a Pueblo County Sheriff's Office (PCSO) SUV,
- Ms. Ward Stamp was placed in the SUV,
- Defendant Spencer gave Ms. Ward Stamp a "pat-down,"

4

- Defendant Spencer testified Ms. Ward Stamp was not free to leave during Defendant Spencer's contact with her,

- Ms. Ward Stamp was soon transferred to Defendant Mahan's PCSO SUV,

- Ms. Ward Stamp was handcuffed during this time,

- Defendant Spencer kept Ms. Ward Stamp in Defendant Mahan's PSCO SUV, where she remained handcuffed,

- Defendant Spencer told Defendant Mahan that Ms. Ward Stamp had no outstanding warrants,

- Defendant Mahan testified Ms. Ward Stamp was not "free to leave" when moved to his SUV,

- Defendant Berumen testified Ms. Ward Stamp was not "free to leave" at this point,

- After being moved to another SUV, Defendant Quintana gave Ms. Ward Stamp another pat-down,

- Defendant Quintana drove Ms. Ward Stamp to the PCSO Annex,

- Ms. Ward Stamp was still handcuffed when she entered the Annex,

- Defendant Quintana eventually removed her handcuffs,

- Defendant Berumen testified Ms. Ward Stamp was not free to leave the interview room, and

- Sherriff Lucero testified Ms. Ward Stamp was not free to leave when transported to the PSCO Annex or interview room.

*See* ECF No. 131 at 8–13.

These are paradigmatic—and undisputed—facts showing Ms. Ward Stamp's Fourth Amendment rights were violated. At bottom, Defendants admit she had no outstanding warrants, and there was no probable cause to detain her. Nonetheless,

5

Defendants moved Ms. Ward Stamp, in handcuffs, throughout SUVs, and eventually into the PSCO Annex, where even after her handcuffs were removed she was still unable to leave the Annex or interview room.

An arrest is a seizure under the Fourth Amendment, *see, e.g., Torres v. Madrid*, 592 U.S. 306, 312 (2021), and rises to the level of being unreasonable where an arresting office lacks probable cause, *see Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007). *See also id.* (noting the "use of . . . handcuffs . . . generally exceed the scope of an investigative detention and enter the realm of an arrest" (citation omitted)). Because Ms. Ward Stamp was handcuffed, without probable cause, and taken from SUVs to a room she could not leave for hours, Defendants' arrest of her is an unreasonable seizure under the Fourth Amendment. *See, e.g., Torres*, 592 U.S. at 312; *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) ("A person is seized by the police . . . when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied." (quotations omitted)).

Defendants' efforts to justify their detention of Ms. Ward Stamp based on *her son's* conduct are unavailing, especially considering the facts they admit and thus render undisputable. *See* ECF No. 136 at 17. So too is the argument that the duration of her detention is somehow lawful because the CIT had to investigate the crime scene. *Id.* at 18. The fact remains that Ms. Ward Stamp was handcuffed without probable cause and trotted between cars before going to the PCSO Annex, amounting to an unlawful seizure.

Next, the Court considers, at Plaintiffs' urging, whether Ms. Ward Stamp had a clearly established right to be free from an unlawful arrest. *See, e.g.,* ECF No. 131 at 13.

She did. It is well settled individuals have a right to be free from unlawful, warrantless arrests, especially where as here, an individual is detained, without probable cause, for hours without the freedom to leave, and does not resist her detention. *See, e.g., Shroff v. Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010) ("It has long been established that an arrest and search without probable cause that a crime has been committed violates the Fourth Amendment." (citation omitted)); *Hayes v. Fla.*, 470 U.S. 811, 816 (1985); *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1217 (10th Cir. 2008). Accordingly, a reasonable jury could reach only the conclusion that Ms. Ward Stamp's arrest was unlawful. Or put differently, no reasonable jury could conclude probable cause existed to arrest Ms. Ward Stamp, given it is undisputed Defendants stated they lacked such probable cause and arrested Ms. Ward Stamp anyway.

      3. *Municipal Liability*

Ms. Ward Stamp moves for summary judgment as to Pueblo County's municipal liability for her underlying constitutional violation. *See* ECF No. 131 at 16. Defendants argue municipal liability cannot attach in this case, largely on the grounds Defendants "did not violate her constitutional or statutory rights." ECF No. 136 at 20. Although the Court disagrees with Defendants that Ms. Ward Stamp's rights were not violated, the Court concludes Ms. Ward Stamp has not shown entitlement to municipal liability at the summary judgment stage.

The Court focuses its inquiry on the "causation" element for municipal liability. *See, e.g., Schwartz for Est. of Finn v. City & Cnty. of Denver*, No. 1:21-cv-02160-CNS-SKC, 2023 WL 1879305, at *2–3 (D. Colo. Feb. 10, 2023) (setting forth elements a plaintiff must

7

satisfy to establish municipal liability). The "causation" element requires that a plaintiff establish a "direct causal link between the policy or custom and the injury alleged." *Id.* (quotations omitted); *see also id*. ("[A] policy or custom must have actually caused the [constitutional] violation." (quotations omitted)).

In this case, a reasonable jury could conclude that Pueblo County policies or customs did not cause Ms. Ward Stamp's constitutional violations. For example, although Defendants do not dispute that "everything that happened" happened *pursuant* to Pueblo County policy and training, *see* ECF No. 136 at 9, this is insufficient to show that any policy and training was the "moving force" behind Ms. Ward Stamp's constitutional violation, even if there is no factual dispute as to whether individual defendants violated Ms. Ward Stamp's constitutional rights. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997); *Cacioppo v. Town of Vail, Colo*., 528 F. App'x 929, 931 (10th Cir. 2013) ("A municipality may not be held liable under [42 U.S.C.] § 1983 solely because its employees inflicted injury on the plaintiff." (quotations omitted)); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). Moreover, as the parties' briefs and attendant evidentiary citations indicate, there is at least a factual dispute as to who "made the decision" to detain Ms. Ward Stamp, be it the CIT, Defendant Mahan, or Defendant Bryant. *Compare* ECF No. 136 at 11, *with* ECF No. 145 at 3. Therefore, given these disputed facts and the fact that a reasonable jury could conclude Pueblo County policies or customs did not cause Ms. Ward Stamp's constitutional violation, summary judgment on this issue in Plaintiffs' favor is improper.

\* \* \*

For the reasons set forth above, Plaintiffs are entitled to summary judgment in their favor on their fourth claim under § 1983 and fifth claim under analogous state law. *See also People v. Rister*, 803 P.2d 483, 489 (Colo. 1990) (explaining provisions of Colorado Constitution are "almost identical" to the Fourth Amendment, and that its "search and seizure provision provides greater protection" than the Fourth Amendment (citation omitted)). Plaintiffs' motion is denied to the extent they seek summary judgment in their favor on their assertion of municipal liability against Pueblo County.

B. **Defendant's Summary Judgment Motion**

Defendants move for summary judgment on several of Plaintiffs' claims. *See, e.g.,* ECF No. 150 at 11. The Court considers Defendants' summary judgment arguments in turn. To the extent these arguments are advanced against Plaintiff's fourth and fifth claims for relief, the Court rejects them because, as discussed in its analysis of Plaintiffs' summary judgment motion, Plaintiffs are entitled to summary judgment on those claims in its favor.

1. *Excessive Force Claims*

Defendants target Plaintiffs' first, second, and third claims for relief, which fundamentally concern the alleged use of excessive force against Richard Ward. *See generally* ECF No. 112 at 24–32. According to Defendants, "Each of the three *Graham* factors, and consideration of the totality of the circumstances, support the objective reasonableness of Defendants McWhorter's and Gonzales' seizure of [Mr.] Ward and, ultimately, Defendant McWhorter's use of deadly force." ECF No. 150 at 17. Plaintiffs contend a reasonable jury could find Defendants McWhorter and Gonzales used deadly

9

pg 10 of 17

force against Mr. Ward, in violation of his constitutional right to be free from excessive force. *See* ECF No. 156 at 14. The Court agrees with Plaintiffs.

The Court presumes familiarity with the relevant factors in its analysis of Defendants' summary judgment arguments. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008). Their application leads to the conclusion a reasonable juror could find that Defendants committed a constitutional violation against Mr. Ward, and thus summary judgment in favor of Defendants on these claims is improper. *See, e.g., Rife v. Oklahoma Dep't of Pub. Safety*, 854 F.3d 637, 643 (10th Cir. 2017).

First, Defendants argue the first *Graham* factor favors them because Mr. Ward was "suspected" of several state law crimes. ECF No. 150 at 15. But the Court agrees with Plaintiffs that a reasonable jury could conclude Mr. Ward's conduct did not rise to the level of severity to justify the use of deadly force against Mr. Ward. *See* ECF No. 156 at 15. There is a sufficient factual dispute as to whether Mr. Ward was engaging in conduct that rises to the level of illegality at the time of his lethal encounter with Defendant McWhorter—much less a severe level of illegality that would swing this factor in Defendants' favor. *See, e.g.,* ECF No. 156 at 3; *Jordan v. Jenkins*, 73 F.4th 1162, 1172–73 (10th Cir. 2023). Particularly where, as Defendants acknowledge, Defendant McWhorter used deadly force against Mr. Ward, and Defendants state that, at the time of Mr. Ward's encounter with Defendant McWhorter, Mr. Ward was in the back seat of the parked vehicle. *See* ECF No. 150 at 17; ECF No. 150 at 3; *Surat v. Klamser*, 52 F.4th 1261, 1274 (10th Cir. 2022) (concluding, after taking facts in light most favorable to

10

plaintiff, that first *Graham* factor did not favor defendants where a jury "could conclude she committed both crimes in a particularly harmless manner" (quotations omitted)).

Second, and relatedly, Defendants have failed to show the second *Graham* factor favors them such that they are entitled to summary judgment on Plaintiffs' claims. *See* ECF No. 150 at 16. The gravamen of Defendants' argument is that Mr. Ward "posed an immediate, and credible, risk to the deputies at the moment force was used." *Id.* The Court agrees with Plaintiffs that a reasonable jury could conclude otherwise. There is a sufficient dispute of genuine material fact as to whether, for instance, Mr. Ward reached for Deputy McWhorter's gun, *see* ECF No. 156 at 15, or Mr. Ward "tackled" Deputy McWhorter in such a manner that justified the use of lethal force against him, ECF No. 150 at 16. Thus, a reasonable jury could conclude this factor—the "most important" *Graham* factor—does not favor Defendants, underscoring the impropriety of granting Defendants summary judgment, particularly where, at a bare minimum, there are material factual disputes as to what Mr. Ward was or was not doing at the time he was shot. *Jordan*, 73 F.4th at 1173 (quotation omitted); *See also Est. of Harmon v. Salt Lake City*, No. 23-4125, --- F.4th ----, 2025 WL 1163268, at *5 (10th Cir. Apr. 22, 2025) ("[T]here's a fundamental distinction between mere possession of a weapon and hostile *movements* with it."); *id.* at *5 ("When viewing the evidence and reasonable inferences favorably to the estate and children, a factfinder could legitimately disbelieve the officers' testimony about hearing threats of stabbing or cutting." (citation omitted)); *Jordan*, 73 F.4th at 1173; *Surat*, 52 F.4th at 1275.

Third, Defendants argue the third *Graham* factor favors them because Mr. Ward swallowed an "unknown substance" and after being removed from the vehicle "actively [and] violently resisted detention." ECF No. 150 at 17. But the Court agrees with Plaintiffs, construing the summary judgment record in the light most favorable to them, that this factor does not favor the use of deadly force. *See* Surat, 52 F.4th at 1275 (stating the "use of force [must] be proportionate" (citations omitted)). For example, a reasonable jury could find Mr. Ward was simply putting an anti-anxiety medication in his mouth, and that he told Defendant McWhorter it was "just a pill." *See, e.g.,* ECF No. 156 at 3. Further, and crucially, a reasonable jury could find that Mr. Ward made no hostile movements that rise to the level of "resisting" detention, or that he manifested any intention to flee, justifying the use of deadly force against him. *See* ECF No. 156 at 16. *See also Harmon*, 2025 WL 1163268, at *5 ("[W]e must view the evidence and reasonable inferences favorably to the estate . . . ."); *Jordan*, 73 F.4th at 1173; *Surat*, 52 F.4th at 1275.

For the reasons set forth above, consideration of the three *Graham* factors and the totality of the circumstances, and construing the factual record in Plaintiffs' favor—as the Court must—a reasonable jury, based on that record, could credit Plaintiffs' "version" of events, *Harmon*, 2025 WL 1163268, at *3, under which the use of deadly force was unjustified and improper, *Surat*, 52 F.4th at 1275. *See also Davis v.* Clifford, 825 F.3d 1131, 1135–36 (10th Cir. 2016). In light of the material factual disputes that Plaintiff creates, and because a reasonable factfinder could conclude the use of force against Mr. Ward was excessive and objectively unreasonable, the Court declines to grant summary judgment on Plaintiffs' first, second, and third claims in favor of Defendants. At bottom,

12

Defendants err in arguing "Plaintiffs *cannot* produce admissible evidence in opposition to Defendants' [version of] these facts." ECF No. 150 at 17 (emphasis added). *Cf.* ECF No. 156 at 16.

### 2. Unlawful Arrest and Seizure Claims

Defendants move for summary judgment on Plaintiffs' fourth, fifth, sixth, and seventh claims for relief. *See* ECF No. 150 at 18. As the Court grants summary judgment in Plaintiffs' favor on the fourth and fifth unlawful arrest claims—recall Defendants admitted there was no probable cause to detain Ms. Ward Stamp at the level of an arrest, and the "good faith" exception is inapplicable—it only considers Defendants' arguments attendant to the sixth and seventh unlawful seizure claims. In doing so, the Court presumes familiarity with the substantive legal framework governing unlawful seizure claims. *See, e.g., Winters v. Bd. of Cnty. Comm'rs*, 4 F.3d 848, 853 (10th Cir. 1993).

As to whether Defendants unlawfully seized Ms. Ward Stamp's property, a reasonable jury could conclude Defendants did. Interpreting the summary judgment record in the light most favorable to Plaintiffs, Plaintiffs have put forth sufficient evidence showing Defendants lacked probable cause to detain Ms. Ward Stamp. It follows from this evidence not only that Ms. Ward Stamp's detention violated her clearly established constitutional rights, but also that a reasonable jury could find the attendant taking of her property was an improper seizure in violation of the federal and state constitutions. *See* ECF No. 112 at 37–40; *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 66 (1992) ("[T]he seizure of the items . . . can be justified only if they meet the probable-cause standard." (citations omitted)). Particularly where it is undisputed that Defendants seized Ms. Ward Stamp's

cell phone and vehicle, *see* ECF No. 156 at 11, and the vehicle was taken to PPD. A reasonable jury could find there was no probable cause for seizing Ms. Ward Stamp's property, and that Defendants did so unlawfully for a prolonged period.

### 3. Defendant McWhorter and Plaintiffs' Third Claim

Defendants argue Defendant McWhorter is entitled to summary judgment on Plaintiffs' third claim for battery causing wrongful death because he "employed only reasonable force" and no reasonable jury could find he "acted willfully and wantonly in utilizing deadly force." ECF No. 150 at 25. Plaintiff agrees that the willful or wantonness of Defendant McWhorter's conduct is tantamount to asking whether Defendant McWhorter used excessive—i.e., unreasonable—force. *See* ECF No. 156 at 21 n.3. Explained above, because a reasonably jury could find Defendant McWhorter used objectively *unreasonable* force, particularly in light of the material factual disputes Plaintiffs have identified, *see, e.g., Harmon*, 2025 WL 1163268, *5, it is improper to grant summary judgment in Defendants' favor on Plaintiffs' third claim for battery causing death. *See* ECF No. 112 at 31. And as for the claim against Defendant McWhorter in his official capacity, it is improper to grant summary judgment against Plaintiffs on their third claim as to Defendant McWhorter's conduct in his official capacity, given (1) a reasonable jury could find he engaged in objectively unreasonable force, and that as discussed above in the Court's analysis of any policies underlying Ms. Ward Stamp's unlawful arrest (2) there are, at a minimum, factual disputes as to any policies that may have been the moving force behind the use of excessive force against Mr. Ward. *Cf. Martinez v. Beggs*, 563 F.3d 1082, 1091–92 (10th Cir. 2009) ("A county or sheriff in his official capacity *cannot*

be held liable for constitutional violations when *there was no underlying constitutional violation* by any of its officers." (quotations omitted)); *id.* ("Likewise, [the defendant] cannot be held liable in his individual capacity for implementing county policies or for the actions of county officers under a theory of supervisory liability, when *there was no violation* of [the decedent's] constitutional rights." (citations omitted) (emphasis added)).

    4. Claims against the Board

Defendants seek summary judgment in their favor as to named defendant Pueblo County Board of County Commissioners (the Board). *See* ECF No. 150 at 26. The Court agrees with Defendants that summary judgment in favor of the Board is proper.

There is some dispute as to whether officers sued in their official capacity is separably suable from a board of county commissioners. *See, e.g., Rogacki v. Bd. of Cnty. Commissioners of Jefferson Cnty., Colorado*, No. 1:21cv-02281-CNS-KLM, 2023 WL 34755, at *2 (D. Colo. Jan. 4, 2023). The Court need not resolve this as a matter of law because Plaintiffs have not created any dispute of material fact as to the Board's involvement in the underlying constitutional injuries that a reasonably jury could find occurred. Indeed, their opposition to Defendants' summary judgment motion lacks argument "explain[ing] clearly" any "[Board] policy and the policymaker(s) to whom the [Board] policy is attributable," much less how a reasonably jury could find that any injury or constitutional violation is attributable to a Board policy or action. *Chavez v. Bd. of Cnty. Commissioners of Lake Cnty., Colorado*, 426 F. Supp. 3d 802, 814 (D. Colo. 2019); *see also Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("[Courts] rely on the parties to frame the issues for decision . . . ." (quotations omitted)). Therefore, the Court agrees with

Defendants that granting summary judgment as to the Board as a defendant is proper—Plaintiffs have not met their burden of showing why or how a claim against the Board can be sustained.

### 5. Qualified Immunity

Finally, Defendants assert qualified immunity as to Plaintiffs' first, fourth, and sixth claims for relief—Plaintiffs' claims for excessive force, unlawful arrest, and unlawful seizure, respectively. *See* ECF No. 150 at 26. Defendants' briefing on this point is borderline conclusory, limited to descriptively citing broad qualified immunity principles—i.e., that Plaintiffs must satisfy two prongs—and then arguing generically that Plaintiffs cannot show violations of constitutional rights or that those rights were clearly established. *See id.* at 150 at 28. But even entertaining these cursory arguments, they fail, as Plaintiffs correctly argue throughout their summary judgment briefing. *See, e.g.,* ECF No. 156 at 14.

Of course, in light of Defendants' qualified immunity assertion, Plaintiffs must then show as to their challenged claims that "a constitutional violation has taken place [and] this violation had been clearly established." *Harmon*, 2025 WL 1163268, at *2 (citation omitted). Explained above in the Court's analysis of both parties' summary judgment motions, because Plaintiffs have shown a reasonable jury could find both constitutional violations and that these violations were clearly established, *see id.* at *8, Defendants are not entitled to qualified immunity as to Plaintiffs' first, fourth, and sixth claims.

For instance, a reasonably jury could find Mr. Ward's rights were violated, based on—at a minimum—material factual disputes as to the use of objectively unreasonable

force against him, and that his right to be free from the use of excessive force is clearly established. *See, e.g., Harmon*, 2025 WL 1163268, at *7; *Clerkley v. Holcomb*, 121 F.4th 1359, 1367 (10th Cir. 2024). And a reasonable jury could certainly find Ms. Ward Stamp's constitutional rights against unreasonable arrests and seizures were violated, given it is undisputed Defendants lacked probable cause to detain Ms. Ward Stamp, and that there was a similar lack of probable cause to seize her property. And, as the above cited cases show, her rights to be free from unreasonable seizures that lack probable cause are clearly established. *See, e.g., Shroff*, 604 F.3d at 1188.

## II.  CONCLUSION

Consistent with the above analysis, the Court GRANTS IN PART and DENIES IN PART the parties' summary judgment motions. No. 131; ECF No. 150.

DATED this 9th day of May 2025.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge